[Cite as *State v. Tucker*, 2018-Ohio-1869.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio

Appellee

v.

Robert Lee Tucker

Appellant

Court of Appeals No. WD-16-063

Trial Court No. 2016CR401

**DECISION AND JUDGMENT**

Decided: May 11, 2018

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney,
David T. Harold and Channa B. Beard, Assistant Prosecuting Attorneys,
for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**MAYLE, P.J.**

{¶ 1} Defendant-appellant, Robert Lee Tucker, appeals the October 31, 2016 judgment of the Wood County Court of Common Pleas convicting him of one count of robbery and one count of obstructing official business. For the reasons that follow, we affirm the trial court judgment.

## I. Background

{¶ 2} On July 28, 2016, Robert Lee Tucker stole merchandise totaling $305.10 from the Walmart store in Perrysburg, Ohio. He pushed a shopping cart filled with this merchandise to the front of the store and presented the store greeter with a phony receipt. When she questioned him about items that did not appear on the receipt, he ran the cart out the doors and across the parking lot to a U-Haul truck that he had driven to the store. He began tossing the stolen items into the front seat of the truck when he was confronted by another Walmart customer, J.R.

{¶ 3} J.R. had seen the store greeter come out the doors and scan the parking lot like she was looking for someone. He then saw Tucker quickly pushing a shopping cart full of merchandise across the lot. J.R. drove over to Tucker and asked him why he was in such a hurry. Tucker panicked, tossed some more items into the truck, then got into the driver's seat. J.R. attempted to stop him, intending to stand in front of the U-Haul, but before he got to it, Tucker accelerated out of the parking space. J.R. believed the truck was going to hit him, and jumped out of the way.

{¶ 4} Perrysburg Township police were alerted to the incident and spotted the U-Haul truck. Officer Kimberly Katafias effected a stop of the vehicle. Tucker attempted to abscond on foot, but surrendered after she threatened to taser him. He was apprehended and taken into custody. Tucker falsely identified himself to Officer Katafias as Donald Russell. His true identity was ultimately determined, and on August 9, 2016, criminal complaints were filed against him in Perrysburg Municipal Court for robbery, a violation of R.C. 2911.02(A)(3), a third-degree felony; receiving stolen property, a

2.

violation of R.C. 2913.51(A), a fourth-degree felony; identity fraud, a violation of R.C. 2913.49(B)(1), a fifth-degree felony; falsification, a violation of R.C. 2921.13(A)(2), a first-degree misdemeanor; and obstructing official business, a violation of R.C. 2921.31(A), a second-degree misdemeanor. Tucker waived a preliminary hearing on August 18, 2016, and the case was bound over to the Wood County Court of Common Pleas.

{¶ 5} On October 6, 2016, Tucker was charged in a three-count indictment with robbery (count one), obstructing official business (count two), and grand theft of a motor vehicle (count three), a violation of R.C. 2913.02(A)(2) and (B)(5), a fourth-degree felony. The case proceeded to a jury trial on October 26, 2016, on counts one and two; the state dismissed count three. The jury found Tucker guilty of both counts, and the trial court sentenced him to a prison term of 36 months on the robbery conviction, and 90 days on the obstructing official business conviction, to be served concurrently. Tucker was ordered to pay the costs of prosecution.

{¶ 6} Tucker timely appealed and assigns the following errors for our review:

> I. The trial court committed prejudicial error in failing to dismiss Appellant's indictment for a violation of R.C. 2945.71(C)(1).
>
> II. The trial court abused it's [sic] discretion in giving an improper jury instruction of Appellant's robbery charge.
>
> III. The trial court erred to the prejudice of Appellant in denying his Crim.R. 29 motion.

3.

IV. The jury's verdict was against the manifest weight of the evidence presented at trial.

V. The trial court committed error to the prejudice of Appellant by imposing the costs of prosecution without consideration of Appellant's present or future ability to pay.

VI. The State of Ohio committed prosecutorial misconduct during it's [sic] closing argument.

## II. Law and Analysis

{¶ 7} Tucker claims that the trial court erred by failing to dismiss the charges against him for violation of his speedy-trial rights; the court improperly instructed the jury on the robbery charge; the evidence was insufficient to sustain his robbery conviction and his conviction was against the manifest weight of the evidence; the trial court improperly imposed costs of prosecution without considering his ability to pay; and the state engaged in misconduct by attacking his counsel's credibility during closing arguments. We address each of Tucker's assignments of error.

## A. Speedy Trial

{¶ 8} In his first assignment of error, Tucker argues that the trial court erred in failing to dismiss the charges against him for violation of the speedy-trial statute. More specifically, he claims that he was not afforded a preliminary hearing within ten days of his arrest as required by R.C. 2945.71(C)(1).

{¶ 9} R.C. 2945.71(C)(1) provides that a person against whom a charge of felony is pending " shall be accorded a preliminary hearing * * * within ten consecutive days

4.

after the person's arrest if the accused is held in jail in lieu of bail on the pending charge." Under R.C. 2945.73(A), "[a] charge of felony shall be dismissed if the accused is not accorded a preliminary hearing within the time required by sections 2945.71 and 2945.72 of the Revised Code."

{¶ 10} Tucker was arrested on July 28, 2016. A preliminary hearing was not scheduled until August 9, 2016—12 days later—and he remained in jail in lieu of bond during that time. He claims, therefore, that the charges against him should have been dismissed.

{¶ 11} Ohio courts recognize that "dismissal for violation of [R.C. 2945.71(C)(1)] is not self-executing and is dependent upon 'some timely and proper action.'" *State v. Martin*, 8th Dist. Cuyahoga No. 87339, 2006-Ohio-5012, ¶ 2, quoting *State v. Wood,* 48 Ohio App.2d 339, 342, 357 N.E.2d 1106 (8th Dist.1975). In other words, a criminal defendant must raise an objection in order to obtain a dismissal for failure to hold a timely preliminary hearing. *See State v. Simons*, 2d Dist. Champaign No. 99CA5, 2000 Ohio App. LEXIS 5411, *6 (Nov. 22, 2000).

{¶ 12} Moreover, the failure to hold a preliminary hearing within the time proscribed under R.C. 2945.71(C)(1) is not fatal to a subsequent indictment for the same offense. *Id.*, citing *State v. Downs*, 2d Dist. Miami No. 96 CA 54, 1997 Ohio App. LEXIS 3413 (July 25, 1997). If an indictment is handed down before action is taken to secure a dismissal, the right to a preliminary hearing is extinguished. *Id. See also Martin* at ¶ 2.

5.

{¶ 13} Here, R.C. 2945.71(C)(1) was violated by the failure to hold a preliminary hearing within ten days of Tucker's arrest, however, Tucker raised no objection, thereby effectively waiving this right. *Simons* at *6. Additionally, Tucker executed a waiver of preliminary hearing on August 18, 2016, *and* he was subsequently indicted by a grand jury for the offenses at issue. The failure to hold a preliminary hearing within the proscribed time, therefore, does not entitle Tucker to dismissal of the charges.

{¶ 14} Accordingly, we find Tucker's first assignment of error not well-taken.

### B. Jury Instructions

{¶ 15} In his second assignment of error, Tucker claims that the trial court abused its discretion by giving an improper jury instruction on the robbery charge. Specifically, Tucker claims that the trial court erred by defining "knowingly" when "knowingly" was not an element of either of the offenses with which he was charged. While Tucker acknowledges that "knowingly" is an element of the underlying theft offense and concedes that the court provided the correct definition of the term, he insists that the court erred because it defined "knowingly" in the context of charging the jury on the robbery charge and failed to define the term in the context of explaining the underlying theft charge.

{¶ 16} The state maintains that the trial court provided instructions to the jury in a logical order, and there was no need to redundantly define terms that had already been defined.

{¶ 17} A trial court has broad discretion in fashioning jury instructions, but it must "'fully and completely give the jury all instructions which are relevant and necessary for

6.

the jury to weigh the evidence and discharge its duty as the fact finder.'" *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, ¶ 46, quoting *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. A jury instruction must present a correct statement of the pertinent law that is appropriate to the facts. *White* at ¶ 46.

{¶ 18} Tucker raised no objection to the jury instruction at trial. "When a party fails to object to the giving of or failure to give a jury instruction before the jury retires to consider a verdict, the party may not assign as error the giving of or failure to give such instruction." *State v. Royster*, 6th Dist. Lucas No. L-83-406, 1984 Ohio App. LEXIS 10650, *24 (Aug. 24, 1984), citing *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209, 436 N.E.2d 1001 (1982). There is, however, a "plain error" exception to this rule. *Schade* at 209. Plain error is error that affects substantial rights. Crim.R. 52(B). In determining whether plain error occurred, we must examine the alleged error in light of all of the evidence properly admitted at trial. *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001). Plain error should be found "only in exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.*, citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. "Reversal is warranted only if the outcome of the trial clearly would have been different absent the error." *Id.*, citing *Long* at paragraph two of the syllabus.

{¶ 19} Here, we find no plain error in the order in which the trial court instructed the jury on the definition of the word "knowingly." The definition was correct, and it

7.

needed to be defined in explaining to the jury the elements of the theft offense underlying the robbery charge.

{¶ 20} We find Tucker's second assignment of error not well-taken.

### C. Crim.R. 29 and Manifest Weight of the Evidence

{¶ 21} In his third assignment of error, Tucker claims that the trial court erred by denying his Crim.R. 29 motion for acquittal, and in his fourth assignment of error, he claims that his robbery conviction was against the manifest weight of the evidence. He claims that the state failed to prove—or that the evidence did not support a finding—that he either "use[d] or threaten[ed] the immediate use of force" in "attempting or committing a theft offense or in fleeing immediately after the attempt or offense," as required to sustain a conviction for robbery under R.C. 2911.02(A)(3). He maintains that he did not turn the truck to veer toward the customer, and he insists that the video does not show that he was aware of the presence of the customer next to the U-Haul.

{¶ 22} A motion for acquittal under Crim.R. 29(A) challenges the sufficiency of the evidence. *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 39. The denial of a motion for acquittal under Crim.R. 29(A) "is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 23} Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could

8.

have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker,* 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978).

{¶ 24} When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387. We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson,* 6th Dist. Lucas No. L–10–1369, 2012–Ohio–6068, ¶ 15, citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 25} Although under a manifest-weight standard we consider the credibility of witnesses, we must nonetheless extend special deference to the jury's credibility determinations given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14.

9.

{¶ 26} Although Tucker attempted to steal just over $300 worth of merchandise—what would normally constitute misdemeanor theft under R.C. 2913.02(B)(2)—he was charged with robbery, a third-degree felony. This elevated charge was premised on Tucker's interaction with J.R., the Walmart customer who approached him in the parking lot to try to thwart his escape. The state claims that Tucker used or threatened the immediate use of force against J.R. when he sped out of his parking space, purportedly coming so close to J.R. that he had to jump out of the way to avoid being struck by the U-Haul.

{¶ 27} The U-Haul was parked in an angled parking space in such a way that Tucker would not have to put the truck in reverse to leave the parking space. There was a car parked to the right of the U-Haul, a large, black SUV parked to the left of the U-Haul, and an island to the left of the black SUV. J.R. pulled his truck behind the U-Haul, got out of the vehicle, and walked between the island and the black SUV toward the U-Haul. He intended to stand in front of the U-Haul to prevent Tucker from leaving. While J.R. was in front of the black SUV, before he reached the U-Haul, Tucker allegedly "slammed on the gas" and accelerated out of the parking space. J.R. described this at trial:

> I had taken my truck and parked it behind a U-Haul where the person was. * * * I rolled down my window because I saw the person throwing stuff in the front seat of the U-Haul and I asked him what he was doing. Then when I asked him what he was doing, he turned around, looked at me like a deer in headlights and he continued doing what he was doing. And then I said it again and got louder and then he continued to do

10.

what he was doing. And then I put my truck in park and I got out, came around the front of my truck, at that moment he stopped what he was doing and then jumped in the truck. At that point, I had lost physical view of where he was, so I came around the front of another vehicle that was parked between us. And then when I got to the front, he started the U-Haul, slammed on the gas and I had to jump out of the way.

{¶ 28} J.R. maintained that Tucker turned to the left, toward him, when exiting the parking space, when he could have simply driven straight. In doing so, J.R. insisted, Tucker came close enough to hitting him that he had to jump out of the way. Video footage of the parking lot was shown to the jury at trial, but it depicts only one angle and the incident occurred quite a distance from the view of the camera.

{¶ 29} On direct examination by the state, J.R. stated that he did not recall whether he could see where Tucker was looking at the time he accelerated out of the parking spot. On cross-examination, he admitted that he did not know if Tucker saw him. Nonetheless, he testified on redirect that there was no doubt in his mind that Tucker knew that he was there.

{¶ 30} Tucker testified at trial. He denied that he tried to hit J.R. and insisted that he did not even see where J.R. was at the time he exited the parking space. He said that he was looking to the right to ensure that there was no oncoming traffic from that direction, and if he had tried to swerve left, he would have collided with the black SUV because of the length of the U-Haul. He explained that to the extent that he may have veered left, he did not do so intentionally; rather, he said that "the tires were already in

11.

that direction from when I parked it and I was still looking to the right to see if cars was coming down the aisle way."

{¶ 31} Under R.C. 2911.02(A)(3), "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [u]se or threaten the immediate use of force against another." "Force" as used in R.C. 2911.02(A)(3) means "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). "The type of force envisioned by the legislature in enacting R.C. 2911.02 is that which poses actual or potential harm to a person." (Citations and quotations omitted.) *State v. Heidelburg*, 6th Dist. Sandusky No. S-05-012, 2006-Ohio-474, ¶ 26. Importantly, the Ohio Supreme Court recognized in *State v. Tolliver*, 140 Ohio St.3d 420, 2014-Ohio-3744, 19 N.E.3d 870, ¶ 23, that "the state need not prove a culpable mental state with respect to the force element in R.C. 2911.02(A)(3)." Rather, the culpable mental state is satisfied if the state proves the mens rea element of the underlying theft offense. *In re K.E.W.*, 11th Dist. Lake No. 2016-L-020, 2016-Ohio-7844, ¶ 14, citing *Tolliver*.

{¶ 32} Although we are skeptical that Tucker saw J.R. or intended to strike him with the U-Haul, the state presented evidence that Tucker nearly struck J.R. with the truck. The state was not required to prove that Tucker *intended* to do so. *Tolliver* at ¶ 23. It was required to prove a culpable mental state only with respect to the underlying theft offense.

{¶ 33} In any event, the state elicited testimony from J.R. indicating that Tucker veered to the left and that J.R. believed that Tucker knew he was there. Having heard the

12.

testimony and after assessing the witnesses' credibility, the jury could have been persuaded that Tucker deliberately attempted to strike J.R. with the U-Haul. Accordingly, we cannot say that the evidence of force was insufficient or that the jury clearly lost its way so as to create such a manifest miscarriage of justice that reversal is required. *See State v. Fritts*, 11th Dist. Lake No. 2003-L-026, 2004-Ohio-3690, ¶ 20 (finding that victim "provided credible testimony that appellant, in an attempt to escape, rapidly accelerated his car toward [him]," and explaining that "[e]ven assuming that appellant's car never came into contact with [the victim], there was sufficient evidence demonstrating appellant used "force" while fleeing from the robbery").

{¶ 34} We find Tucker's third and fourth assignments of error not well-taken.

### D. Costs

{¶ 35} Tucker's fifth assignment of error challenges the trial court's imposition of the costs of prosecution. He contends that the trial court did not make a finding that he has or will have the ability to pay before it ordered him to pay costs. The state argues that the trial court properly imposed the costs of prosecution because such costs do not require a finding that the defendant has the ability to pay.

{¶ 36} Our standard of review on this issue is whether the imposition of costs was contrary to law. R.C. 2953.08(A)(4) and (G)(2)(b); *State v. Farless*, 6th Dist. Lucas Nos. L-15-1060 and L-15-1061, 2016-Ohio-1571, ¶ 4, citing *State v. Collins*, 12th Dist. Warren No. CA2014-11-135, 2015-Ohio-3710, 41 N.E.3d 899, ¶ 30 ("An appellate court may not modify a financial sanction unless it finds by clear and convincing evidence that it is not supported by the record or is contrary to law."). R.C. 2947.23(A)(1)(a) provides

13.

that the trial court shall render a judgment for the costs of prosecution without consideration of whether the defendant has the ability to pay such costs. *State v. Rohda*, 6th Dist. Fulton No. F-06-007, 2006-Ohio-6291, ¶ 13.

{¶ 37} Here, the trial court stated at sentencing that it was "going to order [Tucker] to pay the costs of this matter * * *." The court's judgment entry on sentencing makes clear, however, that it imposed only the costs of prosecution. The court was not required to determine whether Tucker has or will have the ability to pay before imposing the costs of prosecution. Accordingly, we find that the trial court's imposition of costs was not contrary to law.

{¶ 38} We find Tucker's fifth assignment of error not well-taken.

### E.  Prosecutorial Misconduct

{¶ 39} In his sixth assignment of error, Tucker claims that during its closing argument, the state engaged in misconduct by improperly attacking defense counsel's credibility. He recognizes that the court instructed the jury that closing arguments are not evidence, but he maintains that the state's improper comments deprived him of his right to a fair trial.

{¶ 40} The state responds that it commented on the credibility of defense counsel only after counsel expressed his personal views of what the evidence showed. It maintains that while it may have used the term "credibility," it was actually only bringing to light trial counsel's tactic of trying to confuse the jury. And it points out that Tucker failed to object at trial to the state's comments. The state insists that when its closing argument is considered as a whole, the comments were not improper. And it claims that

14.

based on the evidence presented, Tucker would have been convicted regardless of the statements it made during closing argument

{¶ 41} "Generally, prosecutors are entitled to considerable latitude in opening and closing arguments." *State v. Boles*, 6th Dist. Lucas No. L-07-1255, 2009-Ohio-512, at ¶ 47, citing *State v. Ballew,* 76 Ohio St.3d 244, 667 N.E.2d 369 (1996). During closing, a prosecutor may comment on what the evidence has shown and what reasonable inferences may be drawn from the evidence. *Id.* He or she may not, however, denigrate or impute insincerity to defense counsel in the jury's presence. *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 301, citing *State v. LaMar,* 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 167.

{¶ 42} Here, the prosecutor made the following statements attacking defense counsel's credibility:

I don't normally do this, but when a defense attorney gives his own personal opinion of what he thinks the evidence shows, he puts his credibility into issue. Let's talk Mr. Hicks' credibility. * * * Can you believe the defense attorney, or is the defense attorney doing whatever he can to confuse you? To baffle you? To create some possible or imaginary doubts? When the defense attorney can't keep his facts straight, that's a problem. * * * Well, so much for Mr. Hicks' credibility when it comes to looking at the video evidence * * *.

{¶ 43} We find that these comments denigrated and imputed insincerity to defense counsel and were, therefore, improper. *See LaMar* at ¶ 167. However, "statements made

15.

during a closing argument will not result in reversal unless defendant's right to a fair trial was adversely affected." *State v. Hill*, 52 Ohio App.2d 393, 396, 370 N.E.2d 775 (1st Dist.1977). Moreover, as the state points out, defense counsel failed to object, thus—as with Tucker's second assignment of error—our review is limited to plain-error. *State v. Arnold*, 2013-Ohio-5336, 2 N.E.3d 1009, ¶ 145 (2d Dist.).

{¶ 44} Here, we cannot say that the prosecutor's improper comments present the type of exceptional circumstances warranting a finding of plain error or that the outcome of the trial clearly would have been different absent the error. Accordingly, we find Tucker's sixth assignment of error not well-taken.

### III. Conclusion

{¶ 45} We find that the failure to conduct a preliminary hearing within ten days of Tucker's arrest does not entitle Tucker to dismissal of charges because he failed to raise this objection and was subsequently indicted for the offenses. Tucker's first assignment of error is not well-taken.

{¶ 46} We find no plain error in the trial court's instruction to the jury on the definition of the word "knowingly." Tucker's second assignment of error is not well-taken.

{¶ 47} We find that the state presented evidence of the "force" element necessary to convict Tucker of robbery under R.C. 2911.02(A)(3), and we do not find that the jury clearly lost its way in finding that this element was proven, especially given that the state was not required to prove a culpable mental state as to "force." Tucker's third and fourth assignments of error are not well-taken.

16.

**{¶ 48}** We find that the trial court was not required to consider Tucker's ability to pay the costs of prosecution. Tucker's fifth assignment of error is not well-taken.

**{¶ 49}** While we find that the prosecutor made improper comments about defense counsel's credibility, we conclude that those comments did not rise to the level of plain error. Tucker's sixth assignment of error is not well-taken.

**{¶ 50}** Accordingly, we affirm the October 31, 2016 judgment of the Wood County Court of Common Pleas. Tucker is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.        _____

                                                      JUDGE

James D. Jensen, J.        

                                             _____

Christine E. Mayle, P.J.                                              JUDGE
CONCUR.

                                             _____

                                                      JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.