[Cite as *State v. Thomas*, 2019-Ohio-1916.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No. L-17-1266

    Appellee                                      Trial Court No. CR0201701655

v.

Deonte Lamour Thomas                    **DECISION AND JUDGMENT**

    Appellant                                     Decided:  May 17, 2019

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**ZMUDA, J.**

## I.  Introduction

{¶ 1} Appellant, Deonte Lamour Thomas, appeals the September 28, 2017 judgment of the Lucas County Court of Common Pleas, which, following a jury finding him guilty of aggravated burglary, felonious assault, kidnapping, and rape, sentenced him

to a total prison term of 16 years, with 8 years mandatory, and classified him as a Tier III sex offender. For the reasons that follow, we affirm.

## A. Facts and Procedural Background

{¶ 2} On March 25, 2017, police responded to a 911 call at a residence in East Woodside Terrace in Toledo, Ohio. The victim, R.I., told police that Thomas had kicked in her door sometime after 1:00 a.m., assaulted her repeatedly before both fell asleep in her bed, and upon waking around 6:00 a.m., forced her to have sex before agreeing to leave. Police took R.I.'s statement and investigated the scene, and advised R.I. she had within 24 hours of the incident to submit to an examination for purposes of collecting evidence of a sexual assault. The next day, R.I. went to the hospital and a SANE nurse collected evidence of the assault, noting injuries consistent with R.I.'s account of the incident. With the help of family and friends, R.I found places to stay with her children until police could take Thomas into custody.

{¶ 3} On April 20, 2017, Thomas was arraigned on a four-count indictment, charging aggravated burglary in violation of R.C. 2911.11(A)(1) and (B), a felony of the first degree, felonious assault in violation of R.C. 2903.11(A)(1) and (D), a felony of the second degree, kidnapping in violation of R.C. 2905.01(A)(3) and (C), a felony of the first degree, and rape in violation of R.C. 2907.02(A)(2) and (B), a felony of the first degree. Thomas entered a not guilty plea, and after discovery, the parties filed various motions and briefs, arguing the admissibility of evidence. Additionally, the state filed a notice of intent to introduce 404(B) evidence.

2.

**{¶ 4}** On August 31, 2017, the trial court addressed the various evidentiary issues at hearing. Of importance in this appeal, the parties disputed whether the trial court should permit evidence of Thomas's prior conduct, pursuant to Evid.R. 404(B) and R.C. 2945.59. The trial court deemed evidence of property damage unrelated to the incident inadmissible, but evidence of physical violence by Thomas against R.I., occurring prior to the date of the incident, was admissible as relevant to the issues of force and consent, as it pertained to the offense of rape.

**{¶ 5}** On September 5, 2017, jury trial commenced, with Thomas's counsel filing a motion in limine to exclude R.I.'s statements to the SANE nurse as hearsay the morning of trial. The trial court took the motion under advisement, and ultimately permitted the testimony.

**{¶ 6}** In addition to testimony by the SANE nurse, investigators, and R.I.'s family and friends, R.I. herself testified about her relationship with Thomas and about the incident of March 25, 2017. R.I. and Thomas met in the workplace. According to R.I., she and Thomas had an on-again, off-again relationship, but from March 2015 until December 2016, the pair lived together at R.I.'s home with her three children. R.I. described violent episodes during the relationship, including incidents in which Thomas burned her hand, struck her in the cheek with the butt of a pistol, and backhanded her and

blackened her eye.[1]  R.I. also indicated Thomas tried to strangle her on several occasions. Any resistance she exhibited resulted in a prolonged attack.

{¶ 7} Despite the abuse, R.I. said she loved Thomas, and after each incident, Thomas promised to change.  R.I. knew that Thomas also maintained an intimate relationship with another woman, Kayla Smith, and was not happy about the infidelities. R.I. even threatened to make a video of Thomas and Smith having sex "go viral."  By December 2016, the living arrangement was no longer working, and Thomas moved out. R.I. and Thomas continued to work together.

{¶ 8} Thomas and R.I. also continued an intimate relationship after he moved out, with R.I. indicating the two had engaged in consensual sex as recent as March 21, 2017. R.I. testified that the two spent their lunch break that day at her home.  On the evening of March 24, 2017, however, R.I. told Thomas she was going to a cookout and bonfire at a friend's house so that she could avoid seeing him.  In fact, R.I. was hosting the cookout and bonfire for friends and family at her home, and R.I. posted video of her bonfire to Snapchat.  Thomas saw the video, and made numerous attempts to contact R.I. through calls and text messages that went unanswered.[2]

---

[1] Others testified as to a burn on R.I.'s hand, and R.I.'s appearance at her graduation with a black eye.

[2] R.I.'s friend and co-worker, Adrian Sautter, also testified regarding numerous, unanswered calls from Thomas.

4.

{¶ 9} The party at R.I.'s house ended after midnight, and R.I. and her brother sat by the fire, waiting for it to die out, until around 1:00 a.m. R.I.'s brother stayed the night, sleeping in her living room along with two of her children, while R.I.'s oldest child had a friend over in the other bedroom for a sleepover. The kitchen and dining room separated R.I.'s bedroom from the rest of the home, and R.I.'s bedroom was accessible from the back door without crossing through the living room. Before retiring for the night, R.I. secured the doors and windows to the home, checking the locks.

{¶ 10} Shortly after R.I. went to bed, she heard a loud car engine outside the home, loud bangs on the door, and then Thomas appeared in her bedroom. R.I. testified that Thomas was angry, and asked her about a car in the driveway. R.I. told Thomas the car belonged to her brother, who was sleeping in the living room. Thomas took R.I.'s phone and scrolled through her text messages, and after noting texts between R.I. and a male friend, Jessie Garcia, Thomas became upset. When R.I. started crying, Thomas told her to stay quiet or he would kill her.

{¶ 11} Thomas used R.I.'s phone to call Garcia via her Facebook Messenger account, to show Garcia that R.I. was with him.[3] As Garcia watched, Thomas held R.I. by the throat, and tried to force her to kiss him. When R.I. refused to kiss him, Thomas hung up, and choked R.I. until she lost consciousness. When R.I. revived, Thomas placed a second video call to Garcia, and once more tried to make R.I. kiss him. When

---

[3] Garcia also testified, corroborating R.I.'s account of the Messenger video chat.

R.I. refused, he hung up and choked her unconscious once more. When R.I. revived a second time, Thomas straddled R.I. on her bed and pushed his thumb against her eye, threatening to make her "look like Fetty Wap," referencing a rap musician who is missing an eye. Thomas then removed R.I.'s clothes.

{¶ 12} Thomas dragged R.I. by her hair into the bathroom, connected to her bedroom. With R.I. naked on the bathroom floor, Thomas soaked a hand towel in the sink, got on top of her, and covered her face with the wet towel, shoving it into her mouth as she gasped for breath. This continued until R.I. started choking, and Thomas released R.I. so she could use the toilet to throw up. R.I. vomited blood, and Thomas apologized and left the bathroom. After R.I. finished vomiting and emerged from the bathroom, she attempted to go to the kitchen. Thomas back-handed her in the mouth, splitting her lip and knocking her to the floor. R.I. next remembered being back on the bed, and Thomas asked if they could "make love." R.I. told him no, and they both fell asleep.

{¶ 13} Thomas and R.I. awoke around 6:00 a.m. Thomas again asked R.I. if they could "make love." After initially refusing, R.I. believed that sex with Thomas was the only way to make the ordeal end. Also, R.I. was still naked, and Thomas was already in position when he asked, so R.I. testified that she "let it happen." Afterwards, Thomas tried to convince R.I. to let him spend the day with her, as he had called off from work. Instead, R.I. convinced Thomas he had to leave, and agreed to drive him to the hospital to get a doctor's excuse for work. As they left the home, R.I. noted the damage to her door frame, as well as the footprint on the door.

6.

{¶ 14} As R.I. drove, Thomas noted the scratches on her neck and apologized to her, saying it would never happen again and that he wanted to move back home. R.I. ended up dropping Thomas at a nearby McDonald's at his request, and told him he was forgiven and could move back home in order to get him to leave her car. Once R.I. returned home, she exchanged texts with Thomas, asking him about her phone charger, and Thomas texted R.I. about repairing the damage to her door. R.I. then attempted to rest, but was in too much pain to sleep. Around noon, R.I. called her mother, who came over and urged R.I. to call police.

{¶ 15} The state's witnesses and exhibits corroborated R.I.'s account of events.

{¶ 16} At the close of the state's case, Thomas moved for dismissal pursuant to Crim.R. 29. The trial court denied the motion, and Thomas presented his case.

{¶ 17} Thomas called his friend, Alex Zilba, as a witness, who stated he drove Thomas to R.I.'s home the night of the incident and acknowledged his car engine is loud, with no muffler. Zilba testified that he spent the night at R.I.'s house, sleeping on the living room floor, and heard and saw nothing related to any of the charged offenses.

{¶ 18} R.I.'s brother also testified, indicating he heard nothing that night, and slept through until morning, leaving shortly after he awoke. He also indicated, however, that he noted no damage to the door when he entered R.I.'s home, after the bonfire.

{¶ 19} Additionally, Kayla Smith testified, but had no first-hand knowledge of events in R.I.'s home, with her testimony demonstrating she and R.I. were rivals for Thomas's affections.

7.

**{¶ 20}** Thomas testified on his own behalf. He acknowledged taking R.I.'s phone and contacting Garcia via Messenger, but disputed kicking in R.I.'s door or forcing her to have sex. Thomas testified that he divided his time between R.I. and Kayla Smith, staying with R.I. the night before he worked, and returning to Kayla when he had a day off. Thomas contended that revenge motivated R.I.'s accusations, and that she was lying about him to punish him for his infidelities. Thomas also claimed that he continued to live with R.I., and shared expenses with her, disputing testimony that he had moved out in December 2016.

**{¶ 21}** After deliberations, the jury returned a guilty verdict on all charges. The trial court referred the matter for a presentence investigation and report, and on September 28, 2017, the court sentenced Thomas to a total prison term of 16 years, of which 8 years is mandatory, and classified him as a Tier III sex offender. It is from this judgment Thomas brings an appeal.

## B. Assignments of Error

**{¶ 22}** In challenging his conviction, Thomas asserts the following assignments of error:

> I. The trial court erred to the prejudice of Appellant by denying Appellant's motion to exclude Evid.R. 404(B) prior bad acts.

> II. Appellant received ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United

8.

States Constitution and Article I, § 10 of the Constitution of the State of Ohio.

III. Conduct by the trial judge amounted to judicial misconduct in violation of Appellant's right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 10 of the Constitution of the State of Ohio.

IV. The trial court erred in denying Appellant's Crim.R. 29 motion.

V. The jury's verdict was against the manifest weight of the evidence presented at trial.

{¶ 23} We address Thomas's assignments of error in order.

## II. Analysis

### A. 404(B) Evidence

{¶ 24} Thomas first challenges the trial court's admission of evidence of prior conduct, arguing the state introduced such evidence solely to show Thomas acted in conformity with the crimes charged. Thomas maintains that the testimony regarding prior conduct lacked corroboration, and was factually and temporally unrelated to the conduct on trial.

{¶ 25} Evidence of other acts or crimes is not admissible to prove "a defendant's character as to criminal propensity." *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 96, citing Evid.R. 404(B). Such evidence, however, is "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan,

9.

knowledge, identity, or absence of mistake or accident." Evid.R. 404(B); *see also* R.C. 2945.59 (permitting other acts evidence to demonstrate motive or intent, mistake or accident, or a scheme, plan, or system in committing the offense at issue). "The language of Evid.R. 404(B) indicates that the list of purposes for which evidence of other crimes, wrongs, or acts may be admitted is not an exhaustive listing." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 18.

{¶ 26} In considering the admissibility of 404(B) evidence, a court must consider whether the evidence is relevant, whether it is offered for a legitimate purpose, and whether the probative value substantially outweighs the danger of unfair prejudice. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20. We review a decision to permit 404(B) evidence under an abuse of discretion standard. *Morris* at ¶ 19. To find an abuse of discretion, we must find more than an error of law or judgment, and that the admission of other-acts evidence was "unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 27} At trial, the court precluded some of the intended other-acts testimony as unrelated to the crimes charged, but permitted testimony regarding Thomas's prior acts of domestic violence against R.I. At trial, R.I. and others testified regarding past incidents of physical abuse and injury, including a burn to R.I.'s hand with a hot knife, a head injury resulting from a strike with a pistol butt, and a black eye. R.I. also testified that Thomas choked her on numerous occasions, sometimes until she lost consciousness, with

10.

her attempts to resist only prolonging the abuse. On the date at issue, R.I. testified that she did not want to have sex with Thomas, but knew that he would stay and persist until she gave in, and she wanted the abuse to end and for Thomas to leave.

{¶ 28} This testimony was relevant, because it provided context for the rape and tended to explain R.I.'s lack of resistance by demonstrating Thomas's use of physical abuse, past and present, to force her compliance. "It is a well-known rule that, while consent negatives rape, where a woman is affected by terror or is in fear of great bodily injury and harm, brought into being by an accused, who has placed his victim within his power and control, intercourse under such circumstances without consent is rape, even though the victim might have used greater physical resistance or cried out, when it is shown that her will was overcome by the fear or duress." *State v. Rupp*, 7th Dist. Mahoning No. 05MA166, 2007-Ohio-1561, ¶ 26, quoting *State v. Martin*, 77 Ohio App.553, 554, 68 N.E.2d 807 (9th Dist.1946).

{¶ 29} Based on this relevance, the trial court correctly permitted this evidence for a legitimate purpose, and not merely to impugn Thomas's character. The other-acts evidence admitted by the trial court, furthermore, did not pertain to incidents so remote in time and circumstance to render that testimony irrelevant to the intended purpose. "While other acts evidence may be admissible, its probative value becomes attenuated as the distance in time and the nature of the act become more remote." *State v. Moran*, 6th Dist. Wood No. WD-11-042, 2013-Ohio-724, ¶ 18. In this case, the evidence pertained

11.

to similar conduct toward R.I. during the course of their relationship, and therefore was neither remote nor attenuated.

{¶ 30} Finally, the other-acts evidence was not unduly prejudicial. All evidence that tended to prove the state's case was prejudicial to Thomas, but exclusion was only required for evidence that was unfairly prejudicial. *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 23. "Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision." *Crotts* at ¶ 24. Therefore, if the danger of unfair prejudice outweighed the probative value of other-acts evidence, the trial court should have ruled that evidence inadmissible. *Williams*, 2012-Ohio-5695, ¶ 24.

{¶ 31} Here, Thomas argues that evidence of prior conduct was unduly prejudicial, without addressing either the relevance of this evidence or the purpose for which the state proffered the evidence. The trial court gave limiting instructions to the jury following testimony, and again at the close of the state's case in chief as follows:

> Now that [other-acts] evidence was received for a very limited purpose, it was not received and you may not consider it to prove the character of the [Thomas] in order to show that he acted in conformity with that character. If you find that the evidence of other wrongs is true and that [Thomas] committed them, you may consider that evidence only for the purpose of deciding whether it proves that [R.I.'s] will was overcome by fear and may explain her lack of resistance to the sexual assault.

12.

Therefore, evidence that may or may not be relevant regarding the element of force, that's an essential element of the charge of Rape that you will have further instructions on when we get to that point in the trial. So that evidence can not be considered by you for any other purpose.

{¶ 32} Thomas dismisses the trial court's limiting instruction as ineffective, with no argument or authority offered in support of this conclusion. Contrary to Thomas's position, the trial court properly gave a limiting instruction, and "[i]t is presumed that the jury followed the instructions of the court." *State v. Williams*, 73 Ohio St.3d 153, 159, 652 N.E.2d 821 (1995), citing *State v. Murphy*, 65 Ohio St.3d 554, 584, 605 N.E.2d 884 (1992).

{¶ 33} Considering the record, the trial court properly considered the relevance of proffered evidence, as well as the purpose for which the state sought to introduce that evidence, and weighed the probative value against the danger of unfair prejudice. In admitting some of that evidence, the trial court also cautioned the jury regarding the limited purpose for which they might consider that evidence. Therefore, we do not find that the trial court abused its discretion in admitting the evidence of prior acts, pursuant to Evid.R. 404(B), and Thomas's first assignment of error is not well-taken.

## B. Ineffective Assistance of Counsel

{¶ 34} In his second assignment of error, Thomas argues his trial counsel was ineffective, in violation of his constitutional rights, by failing to challenge certain

13.

evidence offered against him, and failing to move an exhibit into evidence and timely disclose other evidence, resulting in its exclusion at trial.

{¶ 35} To demonstrate ineffective assistance of counsel, Thomas must demonstrate that counsel's performance fell below an objective standard of competent representation, making errors that functionally deprived him of his constitutional right to counsel, and that this deficient performance resulted in prejudice to his defense. *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice is demonstrated by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 694. We presume a properly licensed attorney is competent, so "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland* at 689.

{¶ 36} Thomas first argues deficiency based on his counsel's failure to challenge the authenticity of text messages offered by the state, suggesting counsel should have addressed the possibility that text messages were altered in some manner. Thomas presents this argument without any claim that text messages were, in fact, altered, and with no reasoning regarding the impact altered text messages had on the result of his trial. "Given the tentative and interlocutory nature of all in-limine motions, an ineffective-assistance claim based on the decision not to file one bears a stringent burden of

demonstrating prejudice." (Citations omitted.) *State v. Swiergosz*, 197 Ohio App.3d 40, 2012-Ohio-830, 965 N.E.2d 1070, ¶ 22 (6th Dist.)

{¶ 37} It is Thomas's burden to demonstrate ineffective assistance of counsel by showing a violation of the attorney's duty to the client as well as a reasonable probability of a different result, but for this violation. *State v. Wright*, 6th Dist. Erie No. E-15-044, 2017-Ohio-1479, ¶ 17. Despite bearing the burden, Thomas articulates no basis to find any prejudice resulting from the introduction of the text messages he now claims, without support, might have been altered. Instead, the record demonstrates that Thomas addressed the content of these text messages in his own testimony on direct, acknowledging the exchange regarding damage to R.I.'s door, with no challenge to the authenticity of these texts.

{¶ 38} Next, Thomas argues his trial counsel was deficient by failing to object to a brief, in-court demonstration of the strangulation. At the prosecutor's request, R.I. briefly placed the prosecutor's hands on her neck to demonstrate the manner in which Thomas held her neck. This brief demonstration accompanied the following testimony:

{¶ 39} MS. LIPTACK-WILSON: Judge, I'd like to approach the witness and demonstrate with her, the position of [Thomas's] hands.

THE COURT: Go ahead.

MS. LIPTACK-WILSON: Thank you.

Q. Can you stand up, please. If I am [Thomas], can you explain, taking my hands where his hands were on your body?

A. His right hand was around my neck like that.

Q. Anything –

A. This was on and off.

Q. With the left hand?

A. Yes.

Q. Okay. Were you standing or laying down when that occurred?

A. Laying.

Q. Was he saying anything when his hands were around your neck?

A. That I was his.

In arguing that trial counsel was ineffective for failing to object to this evidence, Thomas contends that the demonstration was highly inflammatory and prejudicial, without any reasoning offered in support of this conclusion.

{¶ 40} A court has discretion to permit an in-court demonstration to aid the trier of fact. (Citations omitted.) *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 82. "Demonstrative evidence is admissible if it satisfies the general standard of relevance set forth in Evid.R. 401 and if it is substantially similar to the object or occurrence that it is intended to represent." *Jones* at ¶ 82, citing *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 90; *State v. Palmer*, 80 Ohio St.3d 543, 566, 687 N.E.2d 685 (1997). Despite relevance, a court may exclude evidence that is unduly prejudicial, pursuant to Evid.R. 403. *Jones* at ¶ 82, citing Evid.R. 403(A).

16.

{¶ 41} Here, a female prosecutor asked R.I. to place her hands around R.I.'s neck, to demonstrate the placement of Thomas's hands on the date in question. Thomas points to nothing in the record indicating the demonstration could have misled the jury, or that the demonstration was not similar to the conduct it was intended to represent. Thomas, furthermore, identifies no unduly prejudicial aspect of this demonstration. He does not argue, for example, that the prosecutor appeared more threatening than he would have appeared. Furthermore, the state presented other evidence of the choking described by R.I., presented by the SANE nurse and Jesse Garcia.

{¶ 42} Thomas also argues that trial counsel was deficient in failing to timely provide certain discovery, resulting in exclusion of defense exhibits at trial. His counsel sought, unsuccessfully, to introduce a video recording depicting consensual intercourse with R.I., screenshots from R.I.'s Facebook account, and records of various phone calls and text messages between Thomas and R.I. Thomas identifies no basis, however, to find the necessary prejudice to reverse the verdict based on ineffective assistance of counsel.

{¶ 43} As to the video, the trial court addressed this evidence out of the presence of the jury, just before the cross-examination of R.I., as follows:

It's been expressed to the Court that there may in fact be a video of the sexual interaction between [Thomas] and [R.I.] who is out of the presence of the courtroom as well. I should reflect that. No witnesses are present.

17.

That has been in the possession of the Defense on [Thomas's] phone. He purportedly videotaped this interaction himself. This was not disclosed to the State and it was expressed that depending on the way the testimony comes forth from the victim, both through cross examination by defense counsel and perhaps even on redirect, that defense may want to play this video. It would be clearly within the Court's discretion to rule that this video cannot be played purely on a basis of a discovery violation, that this should have been disclosed to the State prior to trial so that they would have an opportunity to review it and deal with whatever might be displayed on this video.

And even to this point, the State has still not been able to see this recording. * * *

It's the Court's position that we'll allow cross examination to go forward. I will instruct defense counsel not to reference this recording. That if there comes a point in time during the cross examination that defense, through counsel, feels that it may be pertinent to their case, that this recording be played for the Jury. We will recess. I'll hear arguments. One – I'll let the State view it. Then I'll hear arguments in case the State would care to object. And I'll make my ruling at that time. * * *

**{¶ 44}** Contrary to Thomas's position, the trial court never ruled on admissibility of the video, but instead, indicated that should his counsel deem the video relevant during

18.

the course of R.I.'s cross-examination, the trial court could call a recess in order to provide the prosecutor an opportunity to view the video, followed by hearing outside the presence of the jury regarding admissibility. Thomas's counsel did not seek to admit the video at trial, and in arguing that the jury should have viewed the video, Thomas fails to demonstrate the relevance or the admissibility of that video, and offers no support for his assertion that, had the jury viewed his video, the outcome of his trial would have been different.

{¶ 45} Similarly, Thomas fails to identify how the exclusion of Facebook posts or phone records changed the outcome of his trial. Trial counsel sought to introduce two pages of R.I.'s Facebook posts to show that R.I. communicated with others using an account with a different name. R.I. acknowledged, in her testimony, that she used the name depicted on her Facebook account, and the trial court found "no real purpose" in introducing this evidence. As to phone records, Thomas testified regarding the content of those records at trial, reading text messages and testifying regarding the content of phone conversations. Accordingly, without some argument referencing what the trial court excluded, relative to these records, Thomas fails to demonstrate ineffective assistance of counsel.

{¶ 46} Next, Thomas fails to identify any prejudice resulting from the improper questions posed during the cross-examination of Alex Zilba. At trial, Zilba testified that he drove Thomas to R.I.'s house, spent the night sleeping on the living room floor, and heard nothing all night. On cross-examination, the prosecutor inquired into Zilba's

19.

misdemeanor license suspension out of Toledo Municipal Court, and his court date the day before the incident.

{¶ 47} The state argues that Zilba placed the conviction at issue by testifying that he drove Thomas. However, the prosecutor was not seeking to discredit Zilba's claim that he drove Thomas. Instead, the fact that Zilba drove Thomas to R.I.'s home was never in dispute, and it was Zilba's loud engine that R.I. described in her testimony. The mere fact that Zilba testified he drove Thomas did not make his prior conviction for driving without a valid license relevant to the matters on trial, and even if the parties disputed whether Zilba drove that night, prior convictions were inadmissible to attack Zilba's credibility on this subject. *See*, *e.g.*, *State v. Perry*, 6th Dist. Ottawa No. OT-91-004, 1991 Ohio App. LEXIS 5912 (Dec. 13, 1991) (where issue on trial was whether Perry was driving the night of the incident, evidence of previous arrests for driving without a license was irrelevant and, pursuant to Evid.R. 609(A), inadmissible).

{¶ 48} "Pursuant to Evid.R. 609(A), prior convictions that are either felonies or those offenses involving dishonesty or false statement are admissible into evidence for the purpose of attacking the credibility of [a witness]." *State v. Carpenter*, 6th Dist. Erie No. E-00-033, 2002-Ohio-2266, ¶ 57. Thus, the prosecutor improperly questioned Zilba regarding his prior misdemeanor conviction, as driving without a license is neither a felony nor an offense involving dishonesty or a false statement. However, while trial counsel failed to object to this line of questioning, Thomas fails to identify any prejudicial error. While admission of such testimony was contrary to Evid.R. 609(A),

20.

such error was merely harmless error, as Zilba's prior misdemeanor conviction could not have contributed to Thomas's conviction. (Citations omitted.) *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 28; Crim.R. 52(A).

{¶ 49} Finally, Thomas argues his trial counsel failed to preserve various errors for appeal by proffering exhibits that the trial court excluded. In support of this error, Thomas indicates there is no record of proffer of Exhibit E or "any other exhibits that were denied admission by the court, to preserve the record for appeal." He provides no argument in support of any error based on a lack of proffer, and the record on appeal includes an Exhibit E. Furthermore, we can only guess what Thomas means by "any other exhibits," as he fails to identify this evidence, and presents no argument regarding any deficiency or prejudice, relative to this evidence. "App.R. 16(A)(7) requires appellate briefs to contain 'an argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." *State v. Ritter*, 6th Dist. Fulton No. F-05-003, 2005-Ohio-6526, ¶ 79. With no argument or reasoning, we need not attempt to create an argument out of thin air, and may disregard this claimed error. *Id.*

{¶ 50} As with each of the errors attributed to trial counsel, Thomas must do more than demonstrate deficient performance. He must also demonstrate that he was prejudiced by the deficient performance, "so as to deprive [him] of a fair trial." *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 190, citing *Strickland*,

21.

466 U.S. at 687. In seeking to reverse his conviction based on ineffective assistance of trial counsel, Thomas only argues the deficiency of his trial counsel, with no reasoning, and therefore no demonstration of prejudice. Accordingly, we find Thomas's second assignment of error not well-taken.

## C. Judicial Misconduct

{¶ 51} Thomas next argues, in his third assignment of error, that the trial court improperly communicated with the jury, out of the presence of counsel and off the record. After the trial court charged the jury, Thomas indicated he did not waive his presence should the jury submit any questions during deliberations. While the jury did not have any questions, after they reached a verdict and the parties assembled in court outside the jury's presence, the trial court disclosed a previous communication with the jury regarding scheduling. Only the trial court, his criminal bailiff, and the jury were present for the scheduling inquiry.

{¶ 52} The trial court acknowledged the prior contact, describing the content of communication as procedural, not substantive. In response, trial counsel objected to the communications between judge and jury, citing Sup.R. Appx B, Standard 16, which provides in pertinent part:

> All communications between the judge and members of the jury panel from the time of reporting to the courtroom for voir dire until dismissal shall be in writing or on the record in open court. Counsel for

22.

each party shall be informed of such communication and given the

opportunity to be heard.

Trial counsel made no further inquiry into the nature of the communications, however, accepting the trial court's characterization of the contact as procedural, or concerning only the schedule.

{¶ 53} "[A] trial court's ex parte communication with the jury is not necessarily prejudicial error." *State v. Hill*, 73 Ohio St.3d 433, 444, 653 N.E.2d 271 (1995), citing *State v. Williams*, 6 Ohio St.3d 281, 286, 452 N.E.2d 1323 (1983). In order to find prejudicial error, Thomas "'must first produce some evidence that a private contact, without full knowledge of the parties, occurred between the judge and jurors which involved substantive matters.'" *Hill* at 444, quoting *State v. Jenkins*, 15 Ohio St.3d 164, 474 N.E.2d 264 (1984), at paragraph thirteen of the syllabus.

{¶ 54} The applicable rule required all communications between the trial court and the jury to be in writing or on the record. Therefore, the trial court's contact with the jury was improper. But even with this improper contact, the record fails to demonstrate that the trial court's interaction with the jury pertained to substantive matters. Thomas, moreover, does not argue that the court discussed substantive matters with the jury, off the record. Thus, despite improper communications, Thomas fails to satisfy the standard for demonstrating    prejudicial error, and Thomas's third assignment of error is not well-taken.

23.

## D. Crim.R. 29 Motion/Sufficiency of the Evidence

{¶ 55} In his fourth assignment of error, Thomas argues that the trial court erred in denying his Crim.R. 29 motion for acquittal. Pursuant to Crim.R. 29(A), the trial court may enter a judgment of acquittal if the evidence is insufficient to satisfy the statutory elements of the charged offenses. We review the trial court's ruling on a Crim.R. 29 motion using "the same standard as is used to review a sufficiency of the evidence claim." *State v. Witcher*, 6th Dist. Lucas No. L-06-1039, 2007-Ohio-3960, ¶ 20, citing *State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965 (1995).

{¶ 56} "When a defendant challenges the sufficiency of the evidence, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Bies*, 74 Ohio St.3d 320, 324, 658 N.E.2d 754 (1996), quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1996). In reviewing the evidence, "circumstantial evidence is as probative as direct evidence," with circumstantial evidence, alone, sufficient to sustain a conviction. *State v. Manley*, 71 Ohio St.3d 342, 348, 643 N.E.2d 1107 (1994); *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), at paragraph one of the syllabus.

{¶ 57} Thomas first argues insufficient evidence of trespass, to sustain a conviction for aggravated burglary, based on his testimony that he lived with R.I., and shared in paying the bills and rent. Alternatively, Thomas argues that he was present within R.I.'s home by permission, and R.I. did not ask him to leave at any time. The

24.

elements for the crime of aggravated burglary, as set forth in R.C. 2911.11(A)(1), are that no person shall trespass by force in an occupied structure with the purpose to commit any criminal offense, if the offender inflicts or attempts or threatens to inflict physical harm to another.

{¶ 58} In challenging the sufficiency of the evidence, Thomas essentially argues that the jury should have deemed his testimony more credible than the testimony of R.I. or her brother on the issue of trespass. A sufficiency review, however, does not include weighing competing evidence and making credibility determinations. *State v. Tucker*, 6th Dist. Wood No. WD-16-063, 2018-Ohio-1869, ¶ 23, citing *State v. Walker*, 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978). Therefore, while Thomas might disagree with testimony that contradicted his version of events, the state introduced sufficient evidence to demonstrate the trespass element for this offense.

{¶ 59} Thomas next argues that the state produced insufficient evidence to demonstrate the "serious physical harm" element for his felonious assault conviction. Pursuant to R.C. 2903.11(A), proof of felonious assault requires proof that the offender knowingly caused physical harm to another. Again, Thomas argues insufficiency based on conflicting evidence, rather than lack of evidence. He contends that he denied assaulting R.I. in his testimony, and therefore there is no evidence of serious physical harm. This position wholly ignores R.I.'s testimony that Thomas choked her until she lost consciousness. "[B]eing choked to the point of unconsciousness constitutes serious physical harm[.]" *State v. Czajlka*, 101 Ohio App.3d 564, 574, 656 N.E.2d 9 (8th

25.

Dist.1995); *see also State v. Spaulding*, 2017-Ohio-7993, 98 N.E.3d 1057, ¶ 13 (6th Dist.), citing *State v. Sales*, 9th Dist. Summit No. 25036, 2011-Ohio-2505, ¶ 19. Furthermore, a sufficiency review does not permit consideration of conflicting evidence. *Tucker* at ¶ 13.

{¶ 60} Thomas also argues a lack of evidence, sufficient to support his kidnapping conviction, arguing no "credible evidence" of any restraint. Proof of kidnapping requires evidence that the victim's liberty was restrained by force or threat for the purpose of terrorizing or inflicting serious physical harm, as set forth in R.C. 2905.01(A).

{¶ 61} Thomas argues there was no credible evidence that R.I. was unable to leave or move about as she wished, and instead, he contends, his testimony indicated that R.I. was in love with him and wanted to be with him. As previously noted, a sufficiency review does not include weighing contradictory evidence. *Tucker* at ¶ 13. Thomas's argument, moreover, does not address R.I.'s testimony regarding the numerous ways he restrained or terrorized her, including choking, threatening to put out an eye, backhanding, dragging by the hair, and suffocating with a wet hand towel.

{¶ 62} Finally, Thomas argues that there was insufficient evidence to support a conviction for rape, maintaining the sexual contact with R.I. was consensual. The elements for the crime of rape, pursuant to R.C. 2907.02(A), are sexual conduct with another, when the offender purposely compels that person to submit by force or threat of force.

26.

{¶ 63} Thomas maintains that R.I. consented to have sex with him because they had engaged in consensual sex in the past, and R.I. could have alerted others in the house had she not wanted to have sex with him that day. Once more, Thomas raises an issue of credibility, noting that there was no other evidence of force, aside from R.I.'s testimony.

{¶ 64} The force required to demonstrate rape "is that which is necessary to overcome the will of the victim." *State v. Roberson*, 6th Dist. Lucas No. L-16-1131, 2017-Ohio-4339, ¶ 66, citing *State v. Muller*, 3d Dist. Defiance No. 4-11-09, 2012-Ohio-3530, ¶ 57. This element has been deemed satisfied by evidence of minimal physical force, such as pushing and pulling or removing the victim's clothes, with no requirement to prove non-consent or physical resistance to the sexual contact. *Roberson* at ¶ 67, citing *State v. Hartman*, 2016-Ohio-2883, 64 N.E.3d 519, ¶ 27 (2d Dist.). In arguing insufficient evidence, Thomas ignores the physical abuse and threats recounted by R.I. in her testimony, maintaining instead that the state's evidence was insufficient because he testified otherwise. As previously stated, we do not weigh Thomas's credibility against the credibility of R.I. in considering whether there was sufficient evidence to support conviction.

{¶ 65} Considering the sufficiency of evidence as it relates to each offense, the trial court properly denied Thomas's motion for acquittal pursuant to Crim.R. 29(A). Furthermore, Thomas does not dispute that the state presented evidence as to each element of each offense, but instead argues his own testimony was more believable. "In determining whether a conviction is based on sufficient evidence, an appellate court does

not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Heiney*, 2018-Ohio-3408, 117 N.E.3d 1034, ¶ 39 (6th Dist.). Here, the evidence offered against Thomas, if believed, provided a sufficient basis from which the jury could find him guilty, beyond a reasonable doubt. *Bies*, 74 Ohio St.3d at 324, 658 N.E.2d 754, quoting *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. Accordingly, we find Thomas's fourth assignment of error not well-taken.

### E. Manifest Weight of the Evidence

{¶ 66} In his fifth and final assignment of error, Thomas argues the verdict was against the manifest weight of the evidence. Unlike a sufficiency inquiry, which assesses the adequacy of evidence, a manifest weight challenge requires the court to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving any conflicts in the evidence, the jury clearly lost its way and thereby created such a manifest miscarriage of justice that the conviction must be reversed and a new trial must be ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 67} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact finder's resolution of the conflicting testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264,

28.

¶ 25, quoting *Thompkins* at 387. Reversal is appropriate in only "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *Martin* at 175.

{¶ 68} In weighing the credibility of the witnesses, we extend deference to the jury's credibility determination, as the jury observed the witnesses' testimony, noting facial expressions, body language, and voice inflections, and had the opportunity to "discern qualities such as hesitancy, equivocation, or candor (or the lack of it)." *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14.

{¶ 69} In this case, the conflicting evidence argued by Thomas is his own, self-serving testimony. Thomas's other witnesses either were not present at R.I.'s house, or slept through the night and heard nothing. Thomas argues that the jury completely discounted his testimony and viewed him as a bad person, based on 404(B) evidence and his admitted infidelity to both R.I. and Kayla Smith. Reversal is not required based solely on Thomas's contradictory testimony, however. *State v. Welninski*, 2018-Ohio-778, 108 N.E.3d 185, ¶ 65 (6th Dist.). Instead, the jury was free to disbelieve Thomas's testimony, and free to find the state's witnesses more credible. *State v. Holmes*, 6th Dist. Lucas No. L-17-1111, 2019-Ohio-896, ¶ 88.

{¶ 70} Upon review of the evidence and weighing the conflicting testimony, we are not convinced the evidence weighs heavily against conviction, or that the jury clearly lost its way, resulting in a miscarriage of justice. Therefore, we find Thomas's fifth assignment of error not well-taken.

29.

## F.  Conclusion

**{¶ 71}** For the foregoing reasons, the judgment of the trial court is affirmed.

Thomas is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Thomas J. Osowik, J.

_____

Gene A. Zmuda, J.
CONCUR.

JUDGE

_____
JUDGE

30.