DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Sandusky County Court of Common Pleas that found appellant guilty of one count of aggravated robbery and sentenced him to five years imprisonment. For the following reasons, the judgment of the trial court is affirmed.
 {¶ 2} Appellant sets forth six assignments of error:
 {¶ 3} "1) The Trial Court erred to the prejudice of the Defendant in denying Defendant's Motion to Suppress Identification Testimony and not holding a Hearing on the same.
 {¶ 4} "2) The Trial Court erred to the prejudice of the Defendant in calling as the Court's Witness, Sara Dannenberger, at the request of the Prosecuting Attorney.
 {¶ 5} "3) The Verdict of the Jury was against the manifest weight of the evidence, and the Jury's Verdicts were inconsistent and invalid, therefore the Court should have entered a Verdict of Not Guilty for the Defendant.
 {¶ 6} "4) The Trial Court erred to the prejudice of the Defendant in admitting hearsay testimony.
 {¶ 7} "5) The Sentence imposed upon the Defendant was improper, excessive, and not supported by the evidence or the criteria required by the Statute to be considered at sentencing, and thus, the sentence is contrary to law.
 {¶ 8} "6) The Defendant was denied effective assistance of counsel to his prejudice and which denied the Defendant a fair Trial."
 {¶ 9} The undisputed facts relevant to the issues raised on appeal are as follows. On the night of December 14, 2002, three men entered the home of Sara Dannenberger and Mickey Hardy in Sandusky County and demanded money. After taking cash from Dannenberger's purse and an unspecified amount of marijuana, all three men fled in an automobile. Dannenberger immediately called the police and told the dispatcher she knew who the men were. Later that night, Dannenberger provided a written statement in which she identified appellant and Mario Taylor as two of the men who robbed her. Several days later Dannenberger and Hardy identified appellant and Taylor in photo arrays compiled by the sheriff's office. On January 22, 2003, the Sandusky County Grand Jury indicted appellant on one count of aiding and abetting others in committing aggravated robbery, in violation of R.C. 2911.01(A)(1), and one count of aiding and abetting others in committing aggravated burglary, in violation of R.C.2911.11(A)(2). Both counts carried firearm specifications. Appellant entered a plea of not guilty and the case proceeded to trial before a jury on July 23, 2003. On July 25, 2003, the jury found appellant not guilty of aggravated burglary and guilty of aggravated robbery without the firearm specification. On September 4, 2003, the trial court sentenced appellant to five years incarceration. It is from that judgment that appellant appeals.
 {¶ 10} In his first assignment of error, appellant asserts the trial court erred by denying his motion to suppress identification testimony and not holding a hearing on the motion. On the morning of the first day of trial, appellant filed a motion to suppress Dannenberger's identification of him in the photo lineup as being unreliable and unnecessarily suggestive. In his motion, appellant argued Dannenberger was biased, unduly influenced by others and had recanted the identification.
 {¶ 11} The record supports appellant's assertion that the trial court did not rule on the motion prior to trial. However, the motion was not filed until 8:27 a.m. on the day of trial. The trial court noted the motion and stated it was untimely filed. A lengthy discussion took place between the court and counsel regarding several other motions filed, including the state's request for the court to call Dannenberger as a witness and a defense motion to dismiss. Although the trial court did not specifically rule on the motion to suppress, we find it effectively denied the motion when it allowed Dannenberger and Officer Consolo to testify as to the identification and then allowed the photo array to be admitted into evidence.
 {¶ 12} Appellant has not presented any evidence to support his claim the photo array identification was improper. There is no evidence to support appellant's claim the photo array was "not perfect" or his claim Dannenberger was influenced by others when she identified him in the photo array. Captain Jim Consolo, a detective with the Sandusky County Sheriff's Office, testified he placed Dannenberger and Hardy in separate rooms while they looked at the photos so they would not influence one another. Accordingly, we find the first assignment of error not well-taken.
 {¶ 13} In his second assignment of error, appellant asserts the trial court erred by calling victim Sara Dannenberger as the court's witness pursuant to the state's request. The day before trial, the state filed a motion, pursuant to Evid.R. 614, asking the court to call Dannenberger as a witness. The state asserted it had become aware of conflicting statements Dannenberger made regarding the robbery and asked the court to call her as a witness so the state could question her as if on cross-examination as to any prior inconsistent statements. In support of its motion, the state asserted Dannenberger gave written and oral statements to the police identifying appellant as one of the perpetrators. The state further asserted it had been advised by Dannenberger's attorney the day before trial that she recanted her statements identifying appellant. The state reasoned it could not call Dannenberger as its own witness, claim surprise and impeach her under Evid.R. 607(A), because the state was aware before trial of her intention to change her version of events.
 {¶ 14} After hearing arguments on this issue, the court agreed to interview Dannenberger outside the presence of the jury before deciding whether to call her as a witness. After interviewing Dannenberger as to her initial identification of appellant and her grand jury testimony, the trial court announced that it would call her as a witness and allow both parties to cross-examine her as to her previous statements identifying appellant.
 {¶ 15} Evid.R. 614(A) states "[t]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." The state need not demonstrate surprise in order to cross-examine such a witness. State v. Dacons
(1982), 5 Ohio App.3d 112. Further, there is no support in the Ohio Rules of Evidence or in relevant case law for appellant's claim that the state is required to establish a prima facie case prior to asking the court to call a witness.
 {¶ 16} Prior to enactment of the Ohio Rule of Evidence, the Supreme Court of Ohio held a trial court possesses the authority to call individuals as witnesses in the exercise of sound discretion. State v.Adams (1980), 62 Ohio St.2d 151, paragraph four of the syllabus. Under the circumstances of this case, we find that the trial court's decision to call Dannenberger as a witness was not unreasonable, arbitrary or unconscionable and therefore not an abuse of discretion. See Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219. Appellant was not prejudiced thereby and, accordingly, his second assignment of error is not well-taken.
 {¶ 17} In his third assignment of error, appellant asserts the jury's verdicts were inconsistent, invalid and against the manifest weight of the evidence. Appellant argues that the jury's verdict of guilty of aggravated robbery is inconsistent with its finding that he was not guilty of the firearm specification.
 {¶ 18} Appellant was charged with aiding and abetting others in attempting or committing aggravated robbery in violation of R.C.2911.01(A)(1).
 {¶ 19} In criminal cases, in contrast to civil cases,[1] Ohio follows the general rule that "consistency between verdicts on the several counts of an indictment is unnecessary where the defendant is convicted on one or some counts and acquitted on others * * *." State v.Woodson (1985), 24 Ohio App.3d 143, citing State v. Adams (1978),53 Ohio St.2d 223. In such cases, the conviction will generally be upheld despite any rational incompatibility with the acquittal. Woodson, supra.
 {¶ 20} The Ohio rule is consistent with the reasoning set forth inDunn v. United States (1932), 284 U.S. 390, the leading federal case on this subject. Additionally, in United States v. Powell (1984), 469 U.S. 57, the United States Supreme Court reaffirmed the rule established in Dunn
that consistency of verdicts is not required. In Powell, the defendant was acquitted of conspiracy to possess cocaine and possession of cocaine but convicted of using the telephone to facilitate those offenses. The court reasoned "* * * there is no reason to vacate respondent's conviction merely because the verdicts cannot rationally be reconciled. Respondent is given the benefit of her acquittal on the counts on which she was acquitted, and it is neither irrational nor illogical to require her to accept the burden of conviction on the counts on which the jury convicted." Id. at 69. The rationale expressed in Dunn and Powell was followed by the Tenth District Court of Appeals in State v. Woodson,
supra. In Woodson, the defendant was charged with aggravated robbery with a firearm specification. The jury convicted him of aggravated robbery but found the offense was not committed while he had a deadly weapon on or about his person or under his control. On the basis of Dunn and Powell,
the Woodson court affirmed the judgment of the trial court.
 {¶ 21} Upon consideration of the law set forth above, we find the trial court did not err by accepting the jury's verdict and this argument is without merit.
 {¶ 22} Appellant also argues in this assignment of error that the judgment was against the manifest weight of the evidence. Essentially, appellant challenges the testimony of Dannenberger and co-defendant Mario Taylor.
 {¶ 23} The Supreme Court of Ohio has defined the standard applied to determine whether a criminal conviction is against the manifest weight of the evidence. "`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"State v. Thompkins (1997), 78 Ohio St.3d 380 at 387, quoting State v.Martin (1983), 20 Ohio App.3d 172 at 175. Only if we conclude that the trier of fact clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial. Martin at 175.
 {¶ 24} R.C. 2911.01, aggravated robbery, states that:
 {¶ 25} "(A) No person, in attempting or committing a theft offense, as defined in 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 26} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; * * *."
 {¶ 27} Appellant was charged with aiding and abetting others in the commission of the offense. R.C. 2923.03 prohibits complicity with others to commit crimes and provides as follows:
 {¶ 28} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 29} "* * *
 {¶ 30} "(2) Aid or abet another in committing the offense;
 {¶ 31} "* * *
 {¶ 32} "(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were the principal offender. A charge of complicity may be stated in terms of this section, or in the terms of the principal offense."
 {¶ 33} After the trial court voir dired Dannenberger, the trial commenced and Dannenberger testified as to the robbery and her earlier identification of appellant. Dannenberger testified at approximately 11:00 p.m. on December 14, 2002, three men "barged into" her home. Two of the men were wearing ski masks and carrying guns. She identified the first man to enter as Mario Taylor, a former friend of Hardy. Taylor's face was uncovered. Dannenberger testified she got a glimpse of one man's face when he briefly lifted the ski mask. She further testified the men went through the kitchen cupboards and her purse. Dannenberger admitted she had identified appellant when she completed her written statement immediately after the robbery. She again identified him when she viewed the photo array a few days later, and again in her grand jury testimony. Dannenberger also admitted she told the operator when she called 9-1-1 that she knew who the men were and that she told the prosecutor during her grand jury testimony she knew appellant because she had "seen him around" and he was a friend of her boyfriend's cousin. She further testified while the men were in her house, she heard Hardy say, "What the f***'s up, Julian?" Finally, she testified she was no longer sure appellant was one of the men who robbed her. She denied having been threatened by appellant.
 {¶ 34} Mario Taylor testified that on December 14, 2002, he went to the victims' house with appellant and another man to steal money and marijuana. He further testified he went into the house first, followed by the other two men who were wearing ski masks and carrying guns. Taylor testified somebody took some marijuana and he went outside while appellant ran through the house looking through things. He further testified he pled guilty to burglary in connection with the incident.
 {¶ 35} Detective Consolo testified as to his investigation of the robbery. Consolo testified that the night of the robbery he prepared two photo lineups for Dannenberger and Hardy to examine. One lineup had a photograph of appellant and the other had a photograph of Mario Taylor. That night, Dannenberger and Hardy went to the sheriff's office to look at the photo arrays. The detective stated that Hardy and Dannenberger, viewing the photos separately, both immediately picked out Mario Taylor and appellant.
 {¶ 36} The defense presented the testimony of one of appellant's friends who stated he saw appellant during the afternoon and evening of December 14, 2002. Appellant's cousin testified he saw appellant in Chicago on the night of December 14, 2002, at the home of relatives. Appellant's sister testified that she called her uncle's house in Chicago on the night of December 14, 2002 and appellant answered the phone.
 {¶ 37} Dannenberger and Hardy both identified appellant from the police photo array the night of the robbery. Dannenberger also named appellant in the written statement she gave the police and in her grand jury testimony. Appellant was identified by Mario Taylor and, while Taylor's credibility as a co-defendant might reasonably be questioned, a witness's credibility is a matter to be determined by the trier of fact. It is clear the jury gave more weight to the testimony of the victims and Taylor than to that of appellant's cousin and sister.
 {¶ 38} After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we are unable to find that the jury clearly lost its way in resolving conflicts in evidence and created such a manifest miscarriage of justice that appellant's conviction must be reversed. Accordingly, appellant's third assignment of error is not well-taken.
 {¶ 39} In his fourth assignment of error, appellant asserts that the trial court erred by admitting hearsay testimony. In support, appellant cites four statements made during the trial, two of which were objected to by defense counsel, and two of which were not. The two statements objected to involved Dannenberger's testimony that during the robbery Hardy, who did not testify at trial, said, "What the f***'s up, Julian?" and Mario Taylor's testimony that Hardy said, "Julian, I can't believe you are doing this to me again."
 {¶ 40} As to the first statement, as soon as Dannenberger started to relate what Hardy said, defense counsel objected. The prosecutor then said he was going to set a foundation for the testimony and the court allowed him to continue. The prosecutor asked Dannenberger if Hardy's comment was made during the robbery and she said that it was. Dannenberger then related Hardy's full statement. As to the second statement, Taylor testified that the first thing Hardy said during the robbery was "Julian, I can't believe you're doing this to me again." Defense counsel objected but the statement was allowed to stand.
 {¶ 41} The state responds that the foregoing statements were admissible as excited utterances. We agree.
 {¶ 42} Evid.R. 803(2) provides for the following exception to the hearsay rule: "(2) Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. * * *" The admission of a statement as an excited utterance under Evid.R. 803(2) is generally within the sound discretion of the trial court. State v. Duncan (1978),53 Ohio St.2d 215, 219; State v. Smith (1986), 34 Ohio App.3d 180,190-191. An appellate court will not reverse the trial court's decision in such matters absent an abuse of discretion. See State v. Brown
(1996), 112 Ohio App.3d 583, 601; State v. Fowler (1985),27 Ohio App.3d 149, 152.
 {¶ 43} For an alleged excited utterance to be admissible, four prerequisites must be satisfied: (1) the occurrence of an event startling enough to produce a nervous excitement in the declarant; (2) the statement must have been made while still under the stress of excitement caused by the event; (3) the statement must relate to the startling event; and (4) the declarant must have personally observed the startling event. State v. Taylor (1993), 66 Ohio St.3d 295, 300-301; Duncan,
supra, paragraph one of the syllabus, approving and following Potter v.Baker (1955), 162 Ohio St. 488, paragraph two of the syllabus. "The controlling factor is whether the declaration was made under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection." State v. Humphries (1992),79 Ohio App.3d 589, 598.
 {¶ 44} In this case, the statements were made during the course of an armed robbery of the declarant's home. The prerequisites set forth inTaylor, supra, clearly were satisfied and, accordingly, the trial court did not abuse its discretion by allowing the statements.
 {¶ 45} Appellant also asserts that Officer Jaso's statement that Hardy "* * * wanted, from what he said, revenge * * *" constituted inadmissible hearsay. Deputy Jaso was the first officer on the scene after the robbery and his statement was made in response to a question about Hardy's demeanor when he arrived at the home. Just prior to the statement in question, Jaso testified that Hardy was "excited, angered." Defense counsel did not object to the officer's statement.
 {¶ 46} Finally, appellant asserts Detective Consolo's testimony that Hardy picked appellant and Taylor out of the photo lineup was hearsay. In this portion of his testimony, the detective described how he prepared the photo arrays and explained he showed them to Dannenberger and Hardy separately. He then testified Hardy immediately picked out Taylor from one lineup and appellant from the other. Defense counsel did not object to the testimony.
 {¶ 47} "An appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." State v. Williams (1977),51 Ohio St. 2d 112, paragraph one of the syllabus. While an error not raised in the trial court may be reviewed pursuant to the plain error doctrine, notice of plain error is to be taken "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. An alleged error does not constitute plain error pursuant to Crim.R. 52(B) "* * * unless, but for the error, the outcome of the trial clearly would have been otherwise." State v.Campbell (1994), 69 Ohio St.3d 38, 41, quoting Long, supra, paragraph two of the syllabus. Although we are not required to consider errors not raised in the trial court, we have reviewed the record with regard to appellant's claimed error. We find that admitting the testimony did not constitute plain error because appellant has not shown that, but for the error, the outcome of the trial would have been otherwise.
 {¶ 48} Based on the foregoing, we find the trial court did not abuse its discretion by allowing the testimony cited by appellant to be admitted, and appellant's fourth assignment of error is not well-taken.
 {¶ 49} In his fifth assignment of error, appellant asserts his sentence was improper, excessive and contrary to law. Appellant was sentenced to five years imprisonment for aggravated robbery, a first-degree felony. R.C. 2929.14(A)(1) provides, "for a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine or ten years."
 {¶ 50} Pursuant to State v. Comer (2003), 99 Ohio St. 3d 463,2003-Ohio-4165, when imposing sentence, a trial court must first consider the factors set forth in R.C. 2929.12(B) and (C) to determine how to accomplish the overriding purposes of felony sentencing embraced in R.C.2929.11. The trial court stated at the sentencing hearing that it had considered "the principles and purposes of sentencing under R.C. 2929.11
and has balanced the seriousness and recidivism factors under R.C. 2929.12."
 {¶ 51} Additionally, R.C. 2929.14(B) provides that the trial court must impose the minimum sentence on an offender who has not previously served a prison term, unless the court finds one of the following on the record:
 {¶ 52} "(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
 {¶ 53} "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 54} Appellant had not previously served a prison term.
 {¶ 55} The Supreme Court of Ohio has held that, "pursuant to R.C.2929.14(B), when imposing a non-minimum sentence on a first time offender, a trial court is required to make its statutorily sanctioned findings on the record at the sentencing hearing." State v. Comer,
supra. The trial court is not required to give specific reasons for its finding pursuant to R.C. 2929.14(B)(2) . Id., at n. 2, citing State v.Edmonson (1999), 86 Ohio St.3d 324, 1999-Ohio-110, syllabus.
 {¶ 56} In this case, as set forth above, the trial court stated at the sentencing hearing that it considered the principles stated in R.C. 2929.11
and balanced them against the seriousness and recidivism factors set forth in R.C. 2929.12 . Thereafter, the court found, both on the record and in its sentencing judgment entry, pursuant to R.C. 2929.14(B)(2), that "the shortest prison term possible will demean the seriousness of the offense and will not adequately protect the public."
 {¶ 57} Upon consideration of the foregoing, we find the trial court did not err by sentencing appellant to prison for a first degree felony, or for sentencing him to more than the minimum allowable term for the offense. Appellant's fifth assignment of error is not well-taken.
 {¶ 58} In his sixth assignment of error, appellant asserts that he was denied effective assistance of trial counsel.
 {¶ 59} To prevail on a claim of ineffective assistance of counsel, appellant must show counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. This standard requires appellant to satisfy a two-part test. First, appellant must show counsel's representation fell below an objective standard of reasonableness. Second, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different when considering the totality of the evidence before the court. Strickland v.Washington (1984), 466 U.S. 668. This test is applied in the context of Ohio law that states that a properly licensed attorney is presumed competent. State v. Hamblin (1988), 37 Ohio St.3d 153.
 {¶ 60} In support of this assignment of error, appellant states that trial counsel failed to file a request for a bill of particulars; filed all of his pre-trial motions on the morning of trial although the case had been pending for over six months; failed to ask the trial court to rule on his motion to suppress identification testimony; and failed to object to hearsay testimony concerning statements made by Mickey Hardy.
 {¶ 61} In support, appellant makes the blanket statement he was prejudiced and did not receive a fair trial as a result of trial counsel's actions. Appellant's first claim is erroneous because the record shows trial counsel filed a request for a bill of particulars on February 10, 2003. Accordingly, this argument is without merit. Appellant also asserts that counsel filed all of his pretrial motions on the morning of trial. This is not true. While counsel filed several motions on the day of trial, in the seven months between the time he was appointed to represent appellant and the trial, counsel filed a motion for reduction of bond, a request for a bill of particulars, a demand for discovery, a notice of alibi and a motion to sever. As for the motions filed on the day of trial, they raised issues which could reasonably be addressed at that time. This argument is therefore without merit. Appellant also asserts that trial counsel was deficient for not asking the court to rule on his motion to suppress the identification testimony during the pretrial motion hearing and allowing the testimony to be heard by the jury without objection. The record confirms that counsel did not object to the testimony when it was offered. However, based on our earlier finding it was not error for the testimony to be admitted, we now find appellant was not denied a fair trial by counsel's failure to object. This argument is also without merit.
 {¶ 62} Appellant has not proven there exists a reasonable probability that, were it not for counsel's actions as described above, the result of the trial would have been different. See Strickland, supra. Based on the foregoing, we find trial counsel's representation did not fall below an objective standard of reasonableness and, accordingly, appellant's sixth assignment of error is not well-taken.
 {¶ 63} On consideration whereof, this court finds appellant was not prejudiced or denied a fair trial. The judgment of the Sandusky County Court of Common Pleas is affirmed. Pursuant to App.R. 24, costs of this appeal are assessed to appellant.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J. Pietrykowski, J. Parish, J. concur.
[1] See, e.g., Dunn v. Higgins (1968), 14 Ohio St.2d 239, 246; Civ.R. 49(B).