[Cite as *State v. Bender*, 2020-Ohio-722.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                    CASE NO.  14-19-22

      v.

JASON G. BENDER,                         O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Union County Common Pleas Court
Trial Court No. 2018-CR-0168

Judgment Affirmed

Date of Decision:  March 2, 2020

APPEARANCES:

    *Charles A. Koenig* for Appellant

    *David W. Phillips and Melissa A. Chase* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Jason G. Bender ("Bender"), appeals the May 29, 2019 judgment entry of sentence of the Union County Court of Common Pleas. We affirm.

{¶2} This case stems from a June 28-29, 2018 incident during which Bender restrained the victim, K.W., with ropes around her neck, arms, and legs, and by binding her hands and feet with ratchet straps and suspending her from the rafters of a basement ceiling, then brutally beating and raping her. On July 13, 2018, Bender was indicted on four counts: Count One of felonious assault in violation of R.C. 2903.11(A)(1), (D)(1)(a), a second-degree felony, with a firearm specification under R.C. 2941.145(A); Count Two of kidnapping in violation of R.C. 2905.01(A)(3), (C)(1), a first-degree felony, with a sexual-motivation specification under R.C. 2941.147(A) and a sexually violent predator specification under R.C. 2941.148(A); Count Three of rape in violation of R.C. 2907.02(A)(2), (B), a first-degree felony, with a sexually violent predator specification under R.C. 2941.148(A) and a criminal-gang-activity specification under R.C. 2941.142(A); and Count Four of having weapons while under disability in violation of R.C.

2923.13(A)(2), (B), a third-degree felony.[1]  (Doc. No. 1).  Bender appeared for arraignment on July 24, 2018 and entered pleas of not guilty.  (Doc. No. 13).

{¶3} On January 9, 2019, the State filed a motion requesting that the trial court declare K.W. a court's witness.  (Doc. No. 42).

{¶4} On April 22, 2019, the State filed a motion to dismiss the sexually violent predator specification alleged in Counts Two and Three and the criminal-gang-activity specification alleged in Count Three of the indictment, which the trial court dismissed that same day.  (Doc. Nos. 75, 76).

{¶5} The case proceeded to a jury trial on April 22-24, 2019.  On April 24, 2019, the jury found Bender guilty of all the counts and specifications in the indictment.  (Doc. Nos. 78, 79, 80, 81).  (*See also* Doc. No. 84).  On May 29, 2019, the trial court sentenced Bender to 7 years in prison on Count One, 10 years in prison on Count Two, 10 years in prison on Count Three, 30 months in prison on Count Four, and 3 years in prison on the firearm specification.  (Doc. No. 87).  The trial court ordered Bender to serve consecutively the prison terms imposed under Counts One, Two, and Three, and the firearm specification.  (*Id.*).  Further, the prison term imposed as to Count Four was ordered to be served concurrently to the consecutive prison terms imposed as to Counts One, Two, and Three, and the firearm

---

[1] On April 17, 2019, the State filed a motion to amend the indictment to correct a typographical error, which the trial court amended on April 22, 2019.  (Doc. Nos. 70, 77).  On April 29, 2019, the State filed a second motion to amend the indictment (to which Bender did not object), which the trial court granted that same day.  (Doc. Nos. 82, 83).

specification for an aggregate sentence of 30 years in prison. (*Id.*). The trial court also classified Bender as a Tier III sex offender. (Doc. No. 88).

{¶6} Bender filed a notice of appeal on June 18, 2019 and raises three assignments of error for our review. (Doc. No. 93).

## Assignment of Error No. I

**Appellant was deprived of his constitutional rights to due process and to confront his accusers in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution, as a consequence of the trial court permitted [sic] hearsay testimony from a medical witness regarding statements in the medical record that were not admissible under any hearsay exception, thereby preventing appellant from exercising his right to confront in a meaningful way.**

{¶7} In his first assignment of error, Bender argues that the trial court erred by admitting testimony of Andi Stevens ("Stevens"), a forensic nurse coordinator and sexual assault nurse examiner ("SANE") with OhioHealth, as to statements made to her by K.W. Bender argues that the admission of Stevens's testimony (i.e., K.W.'s statements) violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. He further argues that Stevens's testimony was inadmissible hearsay evidence.

*Standard of Review*

{¶8} Generally, the admission or exclusion of evidence lies within the trial court's discretion, and a reviewing court should not reverse absent an abuse of

discretion and material prejudice. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). "However, we review de novo evidentiary rulings that implicate the Confrontation Clause." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 97. "De novo review is independent, without deference to the lower court's decision." *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 27, citing *Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio*, 64 Ohio St.3d 145, 147 (1992).

*Analysis*

{¶9} We will begin by addressing whether the admission of Stevens's testimony violated Bender's Sixth Amendment rights. The Confrontation Clause to the Sixth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides that "'[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * * .'" *Crawford v. Washington*, 541 U.S. 36, 42, 124 S.Ct. 1354 (2004), quoting the Confrontation Clause. *See also State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, ¶ 34; *State v. McNeal*, 3d Dist. Allen No. 1-01-158, 2002-Ohio-2981, ¶ 43, fn. 13.

> The United States Supreme Court has interpreted [the Sixth Amendment right to confrontation] to mean that admission of an out-

-5-

of-court statement of a witness who does not appear at trial is prohibited by the Confrontation Clause if the statement is testimonial unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness.

*Maxwell* at ¶ 34, citing *Crawford* at 53-54. The United States Supreme Court "did not define the word 'testimonial' but stated that the core class of statements implicated by the Confrontation Clause includes statements 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Id.*, quoting *Crawford* at 52.

{¶10} "Only testimonial hearsay implicates the Confrontation Clause." *McKelton* at ¶ 185. "'[T]estimonial statements are those made for "a primary purpose of creating an out-of-court substitute for trial testimony."'" *Id.*, quoting *Maxwell* at ¶ 40, quoting *Michigan v. Bryant*, 562 U.S. 344, 358, 131 S.Ct. 1143 (2011). That is, "[t]o rank as 'testimonial,' a statement must have a 'primary purpose' of 'establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution.'" *Bullcoming v. New Mexico*, 564 U.S. 647, 659, 131 S.Ct. 2705, 2714 (2011), fn. 6, quoting *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266 (2006). "The key issue is what constitutes a testimonial statement: 'It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.'" *State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, ¶ 33, quoting *Davis* at 821. Nevertheless, "[t]here is also no dispute that the

Confrontation Clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, ¶ 18, quoting *Crawford* at 59, and citing *Williams v. Illinois*, 567 U.S. 50, 57-58, 132 S.Ct. 2221 (2012).

{¶11} In this case, Bender argues that the trial court erred by admitting Stevens's testimony regarding statements made to her by K.W.—namely, a "narrative history" provided to Stevens's by K.W. at the hospital. However, even if any of K.W.'s statements to Stevens were testimonial in nature, there was no constitutional error since the victim testified at trial and was subject to cross-examination. "Admission of testimonial statements against a party is a constitutional error when that party does not have the opportunity to cross-examine the declarant." *State v. Durdin*, 10th Dist. Franklin No. 14AP-249, 2014-Ohio-5759, ¶ 30, citing *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, ¶ 36, citing *Crawford* at 68. "Consequently, the Confrontation Clause does not require exclusion of prior statements of a witness who testifies at trial." *State v. Lykins*, 4th Dist. Adams No. 18CA1079, 2019-Ohio-3316, ¶ 90, citing *California v. Green*, 399 U.S. 149, 164, 90 S.Ct. 1930 (1970), and citing *Arnold* at ¶ 66, *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 64, *State v. Kersbergen*, 12th Dist. Butler No. CA2014-10-218, 2015-Ohio-3103, ¶ 68, *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 48, and *State v. Isa*, 2d Dist. Champaign No.

07-CA-37, 2008-Ohio-5906, ¶ 16. Therefore, because K.W. testified at trial, and Bender was able to fully cross-examine her regarding her out-of-court statements, Stevens's testimony did not violate the Confrontation Clause under the facts presented. *Id.* at ¶ 91; *State v. Rose*, 12th Dist. Butler No. CA2011-11-214, 2012-Ohio-5607, ¶ 47, citing *Gray* at ¶ 48.

{¶12} Having determined that Stevens's testimony was not barred by the Confrontation Clause, we must now address whether her testimony was admissible under the Ohio Rules of Evidence. *See State v. Martin*, 5th Dist. Tuscarawas No. 2015AP0010, 2016-Ohio-225, ¶ 52, citing *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, ¶ 165. *See also Lykins* at ¶ 92. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally not admissible unless an exception applies. Evid.R. 802. "Evid.R. 803 is one such rule which permits the admission of certain hearsay statements even though the declarant is available as a witness." *Dayton v. Combs*, 94 Ohio App.3d 291, 300 (2d Dist.1993). Under Evid.R. 803, the following hearsay statements are admissible: (1) present sense impression; (2) excited utterance; (3) then existing mental, emotional, or physical condition; and (4) statements for the purpose of medical diagnosis or treatment.

**{¶13}** "As relevant here, Evid.R. 803(4) provides an exception for '[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.'" *State v. Remy*, 2d Dist. Clark No. 2017-CA-7, 2018-Ohio-2857, ¶ 44, quoting Evid.R. 803(4). "The hearsay rules except statements made for the purpose of medical diagnosis or treatment due to the inherent reliability underlying the nature of those statements." *Lykins* at ¶ 94. *See also State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, ¶ 39. "[S]tatements made for the purpose of medical diagnosis and treatment are considered reliable because "'facts reliable enough to be relied on in reaching a diagnosis have sufficient trustworthiness to satisfy hearsay concerns.'"" *Lykins* at ¶ 95, quoting *State v. Dever*, 64 Ohio St.3d 401, 411 (1992), quoting McCormick, *Evidence*, Section 250 (4th Ed.1992), and citing *Muttart* at ¶ 41. "Thus, "'[i]f a statement is made for purposes of diagnosis or treatment, it is admissible pursuant to Evid.R. 803(4).'"" *Id.*, quoting *Muttart* at ¶ 37, quoting *Dever* at 414.

**{¶14}** "In sexual assault cases such as the case at bar, there is often testimony from a sexual assault nurse. Similar to the dual role of a social worker interviewing a child who may be a victim of sexual abuse, these nurses often perform a dual role involving both medical diagnosis and treatment and the investigation and gathering

of evidence." *Rose*, 2012-Ohio-5607, at ¶ 42, citing *Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, at ¶ 33. "Only those statements made for the purpose of diagnosis and treatment are admissible under Evid.R. 803(4)." *Id.*, citing *Arnold* at ¶ 28 and *Muttart* at ¶ 47. *See also State v. Hartman*, 2d Dist. Montgomery No. 26609, 2016-Ohio-2883, ¶ 51. "Accordingly, the salient inquiry when determining whether a hearsay statement is admissible under Evid.R. 803(4), is whether the statement was made for purposes of diagnosis or treatment rather than for some other purpose." *Rose* at ¶ 42, citing *Muttart* at ¶ 47. "One such 'other purpose' is the gathering of forensic information to investigate and potentially prosecute a defendant." *Id.*, citing *Arnold* at ¶ 33. "To the extent that a victim's statement to a nurse is for investigative purposes in furtherance of such criminal prosecution, the statements will not fall within the hearsay exception under Evid.R. 803(4). Rather, such statements are considered 'testimonial' and implicate the Confrontation Clause." *Id.*, citing *Arnold* at ¶ 28, citing *State v. Siler*, 116 Ohio St.3d 39, 2007-Ohio-5637, ¶ 2.

{¶15} We conclude that Stevens's testimony was properly admitted as a statement made by a victim for purposes of medical diagnosis or treatment. *See State v. Wallace*, 3d Dist. Union No. 14-10-20, 2011-Ohio-1728, ¶ 18. At trial, Stevens testified that her "role as a Forensic Nurse [is to] do a history of the events from the assault that" caused the victim to seek medical treatment. (Apr. 22, 2019

Tr., Vol. I, at 122). Specifically, she testified that the "history of events" "helps guide [her] exam looking for injuries, helping with diagnosis and further treatment that may need to be done * * * and, also, safety planning, if the patient is to be discharged." (*Id.*). Importantly, Stevens testified that (as a part of her "history of events"), she "take[s] a more narrative history" from the patient, which is "important for [her] to provide appropriate medical treatment * * * ." (*Id.* at 127). Stevens then testified to the narrative that she documented from K.W. (*See id.* at 128-132).

{¶16} Although narrative accounts may reveal information subsequently used by law enforcement in a criminal prosecution, "[n]arrative accounts can be reasonably pertinent in establishing a potential diagnosis or treatment." *State v. Warman*, 12th Dist. Butler No. CA2016-02-029, 2017-Ohio-244, ¶ 70 (Piper, J., concurring). *See also id.* ("Even though the victim's narrative account offered to medical personnel can subsequently be used by law enforcement in a criminal prosecution does not prevent the statement from being admitted into evidence pursuant to Evid.R. 803(4)."), citing *State v. Thomas*, 8th Dist. Cuyahoga No. 101202, 2015-Ohio-415, ¶ 24. Indeed, "[a] description of an abusive encounter has consistently been determined to be within the scope of statements offered for medical treatment or diagnosis." *Id.* at ¶ 71, citing *State v. Diaz*, 8th Dist. Cuyahoga No. 103878, 2016-Ohio-5523, ¶ 33-34. That is, "[a] narrative account containing peripheral details as the victim recounts abusive activities can be made for the

-11-

primary purpose of medical diagnosis or treatment." *Id.*, citing *State v. Williams*, 1st Dist. Hamilton No. C140199, 2015-Ohio-3968, ¶ 31-34. Specifically, "[a] patient's statements concerning how the alleged rape occurred can be relevant to show the 'general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.'" *Wallace* at ¶ 18, quoting Evid.R. 803(4). "For example, the victim's statements may guide medical personnel to the particular area(s) of the victim's body to be examined for injury, as well as indicate which areas may need more immediate treatment than others." *Id.*, citing *State v. Menton*, 7th Dist. Mahoning No. 07 MA 70, 2009-Ohio-4640, ¶ 51. Therefore, based on the evidence before us, we conclude that K.W.'s statements contained in the narrative (as presented through Stevens's testimony) were for the purpose of medical treatment or diagnosis. Thus, the trial court did not abuse its discretion by admitting Stevens's testimony. *See id.*

{¶17} Even if we were to conclude that Stevens's testimony was inadmissible hearsay, the error would be harmless. *See id.* at ¶ 21. "'Any error in the admission of hearsay is generally harmless where the declarant of the hearsay statement is cross-examined on the same matters and the seemingly erroneous evidence is cumulative in nature.'" *Id.*, quoting *In re M.E.G.*, 10th Dist. Franklin Nos. 06AP-1256, 06AP-1257, 06AP-1258, 06AP-1263, 06AP-1264, and 06AP-1265, 2007-Ohio-4308, ¶ 32. Indeed, as we previously addressed, the victim was

present at trial and subject to cross-examination, and the jury was able to assess her credibility. *See id.*; *State v. Ceron*, 8th Dist. Cuyahoga No. 99388, 2013-Ohio-5241, ¶ 61; *Rose*, 2012-Ohio-5607, at ¶ 48, citing *State v. Cappadonia*, 12th Dist. Warren No. CA2008-11-138, 2010-Ohio-494, ¶ 20.

{**¶18**} Moreover, Bender's argument that Stevens's testimony was inadmissible hearsay because "Nurse Stevens [sic] primary reason for performing her specialized exam on [K.W.] was to obtain evidence of a crime" is misplaced. (Appellant's Brief at 12). *See Wallace* at ¶ 19; *Rose* at ¶ 42. Instead, Bender's argument is relevant to whether the victim's statements were testimonial for purposes of the Confrontation Clause. *See Wallace* at ¶ 19; *Rose* at ¶ 42. However, because we already concluded that no Confrontation Clause violation occurred in this case, Bender's argument is specious.

{**¶19**} For these reasons, Bender's first assignment of error is overruled.

**Assignment of Error No. II**

**Appellant was deprived of his constitutional rights to due process and effective assistance of counsel in violation of his Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution, when the trial court called the victim as a court witness pursuant to Evid.R. 614, and, further, when appellant's trial counsel failed to object to the court calling the victim pursuant to Evid.R. 614.**

**{¶20}** In his second assignment of error, Bender argues that his trial counsel was ineffective for failing to object to the trial court designating K.W. as a court's witness.

*Standard of Review*

**{¶21}** A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St. 3d 136, 141-142 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976), *vacated in part on other grounds*, 438 U.S. 910, 98 S.Ct. 3135 (1978).

{¶22} "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 3d Dist. Allen No. 1-13-04, 2014-Ohio-259, ¶ 48, quoting *Bradley* at 142, citing *Strickland* at 691. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142 and citing *Strickland* at 694.

*Analysis*

{¶23} On appeal, Bender alleges that his trial counsel was ineffective for failing to object to the trial court designating K.W. as a court's witness. Under Evid.R. 614(A), "[t]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." The purpose of calling a witness as a court's witness is to allow for a proper determination in a case where a witness is reluctant or unwilling to testify, or there is some indication that the witness's trial testimony will contradict a prior statement made to police. *State v. Renner*, 2d Dist. Montgomery No. 25514, 2013-Ohio-5463, ¶ 23, citing *State v. Curry*, 8th Dist. Cuyahoga No. 89075, 2007-Ohio-5721, ¶ 18; *State v. Arnold*, 189 Ohio App.3d 507, 2010-Ohio-5379, ¶ 18 (2d Dist.). "The prime candidate is a victim and an eyewitness who will not otherwise cooperate with the party originally planning to call him." *Renner* at ¶ 23, citing *Curry* at ¶ 18.

{¶24} In this case, prior to the start of trial, the State filed a motion requesting that the trial court call K.W. as its witness under Evid.R. 614(A). In support of its motion, the State represented to the trial court that since the time that K.W. was interviewed by law enforcement regarding the June 28-29, 2018 incident, K.W. "remain[ed] somewhat reluctant to testify due to the nature of th[e] matter and [was] somewhat difficult to reach." (Doc. No. 42). The State further represented, "It is believed that the victim was not supportive of law enforcement becoming involved in this matter and may be uncooperative regarding her testimony and what she may or may not recall." (*Id.*). At trial, prior to calling K.W. to the stand, the State (outside the presence of the jury) again requested (and Bender's trial counsel did not object) that the trial court call K.W. as its witness. The State argued that it "had difficulty locating" K.W.; "difficulty communicating with" K.W.; and "issued a subpoena on the day of the trial that it was scheduled for last time in order to make sure that she" appeared at trial. (Apr. 23, 2019 Tr., Vol. I, at 69). Based on this evidence, it was not error for the trial court to designate K.W. as its witness. *See Renner* at ¶ 26; *State v. Kiser*, 6th Dist. Sandusky No. S-03-028, 2005-Ohio-2491, ¶ 13, 16; *State v. Marshall*, 9th Dist. Lorain No. 01CA007773, 2001 WL 1647706, *2 (Dec. 26, 2001). Because it was not error for the trial court to designate K.W. as its witness, Bender's trial counsel was not ineffective for failing to object.

{¶25} Bender's second assignment of error is overruled.

**Assignment of Error No. III**

**The evidence adduced at trial is insufficient as a matter of law to support appellant's conviction on the charge of rape.**

{¶26} In his third assignment of error, Bender argues that his rape conviction is based on insufficient evidence. In particular, Bender contends that his rape conviction is based on insufficient evidence because the State presented insufficient evidence that he compelled K.W. to engage in sexual conduct by force or threat of force.

*Standard of Review*

{¶27} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33,

citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

*Analysis*

{¶28} R.C. 2907.02 sets forth the offense of rape and provides, in relevant part: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2). Bender does not dispute that he engaged in sexual conduct with K.W.; rather, he argues that the State presented insufficient evidence that he purposely compelled K.W. to engage in that sexual conduct by force or threat of force. As a result, we need only address those elements of forcible rape: (1) whether Bender purposely compelled K.W. to engage in sexual conduct, and (2) whether Bender did so by force or threat of force. *See State v. Stevens*, 3d Dist. Allen No. 1-14-58, 2016-Ohio-446, ¶ 14.

{¶29} In addressing the force-or-threat-of-force language under the rape statute, the Supreme Court of Ohio clarified that "[a] defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be

-18-

used if the victim does not submit." *State v. Schaim*, 65 Ohio St.3d 51 (1992), paragraph one of the syllabus.

> A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.

R.C. 2901.22(A). "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). A victim "need not prove physical resistance to the offender" in order to demonstrate force. R.C. 2907.05(D).

{¶30} In rape cases in which the victim is not a child, the State "must prove force or threat of force either through direct evidence of such or by inference where the defendant overcame the victim's will by fear and duress." *State v. Rupp*, 7th Dist. Mahoning No. 05 MA 166, 2007-Ohio-1561, ¶ 33. *See also Stevens* at ¶ 20 ("'[T]he key inquiry for determining whether the State presented sufficient evidence on the element of force is whether the "victim's will was overcome by fear or duress."'"), quoting *State v. Wine*, 3d Dist. Auglaize No. 2-12-01, 2012-Ohio-2837, ¶ 40, quoting *In re Forbess*, 3d Dist. Auglaize No. 2-09-20, 2010-Ohio-2826, ¶ 40, citing *State v. Heft*, 3d Dist. Logan No. 8-09-08, 2009-Ohio-5908, ¶ 88, citing *State v. Eskridge*, 38 Ohio St.3d 56, 58-59 (1988). "[I]f the defendant created the belief that physical force will be used in the absence of submission, then threat of force

can be inferred"—that is, a "threat of force includes both explicit and implicit threats" because "[n]othing in the rape statute requires the threat of force to be direct or express." *Rupp* at ¶ 33. *See also Schaim* at paragraph one of the syllabus ("The "force or threat of force" element "can be inferred from the circumstances surrounding sexual conduct."); *State v. Worrell*, 10th Dist. Franklin No. 04AP-410, 2005-Ohio-1521, ¶ 43 ("Thus, '[a] defendant purposely compels another to submit to sexual conduct by force or threat of force' by creating 'the belief that physical force will be used if the victim does not submit' to the defendant's actions."), *rev'd in part on other grounds, sub nom. In re Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 313, 2006-Ohio-2109, quoting *Schaim* at paragraph one of the syllabus. "In order for a defendant to overcome his victim's will by fear or duress, the defendant would have had to engage in sufficient behavior toward the victim. This behavior is objective and its effect is viewed in light of the totality of facts and circumstances existing at the time of the alleged rape." *Rupp* at ¶ 41. *See also Stevens* at ¶ 21 ("'[T]he amount of force [necessary to prove forcible rape under R.C. 2907.02(A)(2)] must be examined in light of the circumstances.'"), quoting *State v. Runyons*, 3d Dist. Union No. 14-91-30, 1992 WL 136196, *2 (June 9, 1992).

{¶31} On appeal, Bender contends that the State presented insufficient evidence that he purposely compelled K.W. to submit to the sexual conduct by force or threat of force because K.W.'s testimony that she "thought that her having sex

with [Bender] might calm him down and stop him from hitting her" "shows that she did this knowingly and consensually." (Appellant's Brief at 24). Specifically, Bender contends that there is insufficient evidence of the force-or-threat-of-force element based on K.W.'s testimony because her testimony reveals that "[s]he may not have wanted to have sex with [Bender], and her reasons for doing so may have been far from romantic, but the sex was not forced upon her." (*Id.*).

> In fact, the statement Nurse Stevens said [K.W.] made to her, that having sex with [Bender] 'usually' makes things better and makes [Bender] leave her alone, shows that this sort of sexual behavior between [Bender] and [K.W.] is not unique to the events of June 28-29, but appears to be a normal part of their non-traditional relationship.

(*Id.*).

{¶32} Bender's argument is misplaced. *See Worrell* at ¶ 45 (concluding that the victim's "failure to physically resist does not negate the forcible element of the rapes"), citing *State v. Hurst*, 10th Dist. Franklin No. 98AP-1549, 2000 WL 249110, *4 (Mar. 7, 2000); *Rupp* at ¶ 42 (noting that "a victim need not risk physical damage or even death to later prove that she was raped"). K.W.'s testimony does not negate the forcible element of rape under R.C. 2907.02(A)(2); rather, K.W.'s testimony is sufficient evidence that Bender overcame her will by fear and duress. *See State v. Thomas*, 6th Dist. Lucas No. L-17-1266, 2019-Ohio-1916, ¶ 28 ("This testimony was relevant, because it provided context for the rape and tended to explain R.I.'s lack of resistance by demonstrating Thomas's use of physical abuse, past and

present, to force her compliance."). Indeed, that Bender concedes that K.W. "may not have wanted to have sex with" him is illustrative of the implicit threat to compel K.W. to engage in sexual conduct.

{¶33} At trial, K.W. testified that (at the time of the incident) she was in a romantic relationship with Bender and the two were living together. (Apr. 23, 2019 Tr., Vol. I, at 74-75). K.W. testified that (during the evening of June 28, 2018), she and Bender began arguing after Bender discovered that she was moving her things out of the residence that she shared with him. (*Id.* at 82). The State presented evidence that the argument progressed into a physical altercation during which Bender "tied [her] up down in the basement" by placing "ropes" "around [her] neck and arms and legs," then by binding her hands and her feet with "ratchet straps" and suspending her from the rafters. (*Id.* at 84-85); (Apr. 22, 2019 Tr., Vol. I, at 128); (State's Ex. 4). Then, Bender "continued hitting" her with "[h]is fist"; "a piece of wood"; "a pole"; a slingshot; a pan; and a gun. (Apr. 22, 2019 Tr., Vol. I, at 85-86); (Apr. 23, 2019 Tr., Vol. I, at 130); (State's Ex. 4). "Bender had [her] sit there on all fours kicking [her] and then he used a back whip. It's a leather strap with heavy objects on it. Leather strap with rebar and a ball bearing on it." (Apr. 23, 2019 Tr., Vol. I, at 130-131); (State's Ex. 4). K.W. "had to sit there on [her] hands and knees when he put the knife * * * in her vagina." (*Id.* at 131); (*Id.*). Stevens also testified

that K.W. reported to her that Bender bit her arm. (Apr. 23, 2019 Tr., Vol. I, at 127); (State's Ex. 4).

{¶34} According to Stevens, K.W. reported that Bender would not permit her to eat or sleep because "that is part of the game, too." (Apr. 23, 2019 Tr., Vol. I, at 132); (State's Ex. 4). The State also presented evidence that (at some point during the assault), K.W. was naked and that Bender would not return K.W.'s clothes to her. (Apr. 23, 2019 Tr., Vol. I, at 130); (State's Ex. 4). Moreover, K.W. testified that Bender forced her to cut off her hair, then he used "clipper things" to make it shorter. (Apr. 22, 2019 Tr., Vol. I, at 89-90). (*See also* Apr. 23, 2019 Tr., Vol. I, at 131); (State's Ex. 4). K.W. further testified that she was screaming during the assault but Bender put "rags and bandanas" in her mouth to muffle her screams. (Apr. 22, 2019 Tr., Vol. I, at 131). (*See also* Apr. 23, 2019 Tr., Vol. I, at 129); (State's Ex. 4). According to K.W., Bender hit and kicked her over her entire body and that the altercation lasted "until the next morning." (Apr. 22, 2019 Tr., Vol. I, at 86, 89). Importantly, K.W. testified that she was "scared" of Bender during the June 28-29, 2018 incident. (*Id.* at 127).

{¶35} Mindful of her fear, K.W. testified that she engaged in sexual conduct ("more than once") with Bender during the assault "because [she] thought it would calm him down." (*Id.* at 88). K.W. reported to Stevens that "[u]sually [engaging in sexual conduct with Bender] makes things better and he leaves [her] alone for a little

bit when [she] do[es] it," but that "[i]t turned worse" in this instance. (Apr. 23, 2019 Tr., Vol. I, at 131); (State's Ex. 4). K.W. testified that she eventually escaped by running and hiding from Bender, then having a neighbor take her to Burger King for help. (Apr. 22, 2019 Tr., Vol. I, at 93-94). According to K.W., she requested that her friend take her to a hospital in another county because she was afraid that Bender would find her at the local hospital. (*Id.* at 95).

{¶36} Based on the totality of the circumstances of this case, a rational trier of fact could infer that K.W.'s state of fear or duress during a prolonged period of torture was such that she was compelled to submit to the sexual conduct to end the torture. *See Thomas*, 2019-Ohio-1916, at ¶ 27 (concluding that the victim's testimony "regarding past incidents of physical abuse" and that she engaged in sexual conduct with Thomas because "she wanted the abuse to end and for Thomas to leave" was relevant to whether Thomas purposely compelled the victim to engage in sexual conduct by force or threat of force). *See also State v. Rucker*, 1st Dist. Hamilton No. C-110082, 2012-Ohio-185, ¶ 17 (concluding that evidence that Rucker struck the victim with belts—even if the beatings occurred at times other than the sexual assaults—was relevant to whether the victim's will had been overcome by fear or duress); *Hurst*, 2000 WL 249110, at *4 (Mar. 7, 2000) (noting that the absence of physical resistance "highlights the frightful experiences and threat of force present during the sexual encounter"). Accordingly, a rational trier

of fact could conclude beyond a reasonable doubt that Bender engaged in conduct which would overcome K.W.'s will by fear or duress and, therefore, that Bender purposely compelled K.W. to engage in sexual conduct by force or threat of force. Consequently, Bender's rape conviction is based on sufficient evidence, and his third assignment of error is overruled.

{¶37} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**